J-S59016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RYAN FLYNN | |
| Appellant | No. 2934 EDA 2013 |

Appeal from the Judgment of Sentence September 15, 2011
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004911-2010

BEFORE:  SHOGAN, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED OCTOBER 08, 2014**

Ryan Flynn appeals from the judgment of sentence imposed in the Court of Common Pleas of Philadelphia County after a jury convicted him of theft by unlawful taking,[1] conspiracy,[2] and fleeing or attempting to elude a police officer.[3]  After careful review, we vacate and remand for resentencing.

In the early morning hours of April 4, 2010, Jill Kornock left her friend's house to walk to her car, which was parked in a lot under I-95 at the intersection of Richmond Street and Lehigh Avenue in Philadelphia.  As she

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3921(a).

[2] 18 Pa.C.S.A. § 903.

[3] 75 Pa.C.S.A. § 3733(a).

approached her car, she was accosted by Flynn and another male. Flynn grabbed her arm from behind and told her to give him her keys and pocketbook and leave, because Kornock's friend owed him money and he was going to take her car. Thereafter, Flynn and the other male got into the car and drove away on Richmond Street. Kornock called 911 and Officer Joseph Murphy responded within minutes to find Kornock very upset and crying hysterically. N.T. Trial, 7/12/13, at 195. Using information given to him by Kornock, Officer Murphy provided flash information over police radio regarding the vehicle and offenders.

Officer Keith White and his partner were at the intersection of "F" Street and Allegheny Avenue when he heard the radio call and observed Flynn driving a red Chevy Lumina. They, along with two other officers, began to pursue the vehicle with their lights and sirens activated. A high-speed chase ensued through residential areas, during which Flynn disregarded traffic signs and lights and, at times, drove into oncoming traffic. At one point, Flynn drove at 45 m.p.h. through a gas station, striking trash cans and causing patrons to dive out of the way to avoid being struck. Finally, Flynn drove into a wooded area and off a ravine with a twenty-foot drop into a swamp. Officer White, along with other officers, set up a perimeter around the wooded area and called for back-up air support from a helicopter in an effort to locate Flynn and the vehicle.

Officer Chris Clemons, pilot of a police helicopter, responded to the area and initiated a visual search for the vehicle, followed by a search with a

thermal camera. After approximately twenty minutes, the thermal camera located a heat source in the wooded area, to which Officer Clemons directed ground units. Officer White located Flynn submerged in a swampy area in an apparent attempt to conceal himself. Kornock was taken to the location and positively identified Flynn and the other male as the individuals who had taken her car. She also identified her vehicle and recovered her pocketbook from inside.

Flynn was arrested and charged with robbery, conspiracy, theft by unlawful taking, carjacking, fleeing the police and related offenses. Flynn proceeded to a jury trial before the Honorable James Murray Lynn on July 12, 2011, after which he was convicted of conspiracy, theft by unlawful taking and fleeing from police. On September 15, 2011, Flynn was sentenced to consecutive sentences of three to six years' imprisonment on the theft conviction, three and one-half to seven years' imprisonment for conspiracy and one to two years imprisonment for fleeing the police. Flynn filed a motion for reconsideration of sentence, which was denied by order dated March 2, 2012.

Flynn did not file a direct appeal. On October 28, 2012, he filed a petition pursuant to the Post Conviction Relief Act (PCRA)[4] in which he alleged he had been abandoned by counsel on direct appeal. By order dated

---

[4] 42 Pa.C.S.A. §§ 9541-9546.

October 1, 2013, the court reinstated Flynn's direct appellate rights[5] and a notice of appeal was filed that same day. Flynn filed a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on October 29, 2013. The trial court filed its Rule 1925(a) opinion on December 27, 2013.

Flynn raises the following issues on appeal:

1. Did the [trial] court err by refusing to declare a mistrial after the prosecutor twice impermissibly referenced [Flynn's] post-arrest silence?

2. Did the [trial] court abuse its discretion in sentencing [Flynn] well above the sentencing guidelines without stating sufficient reasons on the record for doing so and after not giving proper weight to [Flynn's] action in taking responsibility for his behavior, resulting in a manifestly excessive sentence?

Brief of Appellant, at 4.

Flynn first asserts that Judge Lynn erred by refusing to grant a mistrial after the prosecution made impermissible references to Flynn's post-arrest silence. This claim is meritless.

The standard governing our review of a trial court's refusal to grant a request for a mistrial has been summarized by this Court as follows:

---

[5] The record also contains an order dated May 7, 2013, signed by the PCRA court and filed of record in the Court of Common Pleas, purporting to reinstate Flynn's appellate rights by agreement of the parties. The docket also reflects the filing of that order. The docket further shows that a second PCRA petition was filed by counsel on September 24, 2013; however, that petition is not contained in the certified record.

> The decision to declare a mistrial is within the sound discretion of the court and will not be reversed absent a flagrant abuse of discretion. A mistrial is an extreme remedy that must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial. A trial court may remove taint caused by improper testimony through curative instructions. Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required. The circumstances which the court must consider include whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed, whether the Commonwealth exploited the reference, and whether the curative instruction was appropriate.

*Commonwealth v. Manley*, 985 A.2d 256, 266-67 (Pa. Super. 2009), quoting *Commonwealth v. Bracey*, 831 A.2d 678, 682-83 (Pa. Super. 2003) (internal punctuation and quotations omitted).

It is well-established that a defendant enjoys a constitutional right to remain silent and that it is a violation of that right to refer at trial to his post-arrest silence. *Commonwealth v. Costa*, 742 A.2d 1076, 1077 (Pa. Super. 1999). "An impermissible reference to an accused's post-arrest silence constitutes reversible error unless shown to be harmless. Because of its nature, an impermissible reference to the accused's post-arrest silence is innately prejudicial." *Id.* quoting *Commonwealth v. Clark*, 626 A.2d 154, 157-58 (Pa. 1993). However,

> If the Commonwealth mentions a defendant's post-arrest silence, the court might still be able to cure any prejudice through prompt and adequate curative instructions. To evaluate whether cautionary instructions can cure a reference to a defendant's post-arrest silence, courts must consider: (1) the nature of the reference to the defendant's silence; (2) how it was elicited; (3) whether the district attorney exploited it; and (4) the promptness and adequacy of the cautionary instructions.

> If the reference to the defendant's post-arrest silence was such that it incurably compromised the jury's objectivity and would deprive the defendant of a fair trial, then the court should grant a mistrial.

*Commonwealth v. Moury*, 992 A.2d 162, 176 (Pa. Super. 2010) (internal citations and quotation marks omitted).

Finally, a reference to a defendant's post-arrest silence could also constitute harmless error if the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. *Commonwealth v. Mitchell*, 839 A.2d 202, 214 (Pa. 2003). However, if there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless. *Id.* A reviewing court will find an error harmless where the uncontradicted evidence of guilt is overwhelming, so that by comparison the error is insignificant. *Id.* at 214-15.

Here, Flynn's version of events differed substantially from Kornock's. In Flynn's version, Flynn, his associate, Henry Reeves, and Kornock drove around in Kornock's vehicle looking for marijuana. At some point, Kornock parked in the lot under I-95 in order to go to her friend's house to procure the drug. As Flynn and Reeves waited in the vehicle for Kornock to return, they observed a police cruiser nearby and became concerned that the officer was watching them. Flynn claims that he panicked and decided to drive away in Kornock's vehicle, even though Kornock had not yet returned from her friend's house. After Flynn pulled away, the police cruiser's lights activated, causing Flynn to flee.

On cross-examination, the prosecutor asked Flynn if he had spoken to the police after he was arrested.

Q:     [The police] were saying that Mr. Reeves was the driver and you were the passenger?

A:     No, they never said anything like that.

Q:     Okay.  Did you say, I was driving?

MR. DRISCOLL [Counsel for Flynn]:        Objection.
THE WITNESS:     No.
THE COURT:        Overruled.

Q:     Did you tell anybody, the night that this happened, that you were driving the car?

A:     I didn't say anything to anybody and I wasn't asked any questions.

Q:     Okay.   Later on, did you have the opportunity to tell anybody; did you have a chance to tell any of the police officers what happened?

MR. TAUBER [Counsel for Reeves]: Judge,   I'm   going   to object.
MR. DRISCOLL:   Can I have a sidebar?

N.T. Trial, 7/14/11, at 93-94.   At sidebar, the following discussion transpired:

MR. DRISCOLL: Your Honor, I object to this line of questioning.
[The prosecutor] has asked the witness whether or not he made any statements to police.  He clearly has a right to remain silent post-arrest.   Any questions aimed at eliciting any responses to these questions that may or may not have been asked could have violated his right to remain silent, and I'd ask for an instruction.
MR. TAUBER:     It is a plain Fifth Amendment right to remain silent.  It's an inappropriate question under any analysis.
MR. SCHULTZ:    I'll move on.

- 7 -

THE COURT: Alright.

*Id.* at 94-95. Thereafter, the prosecutor did not return to the objected-to line of questioning.

Later, during his closing remarks, counsel for Flynn's co-defendant argued as follows:

> Let me talk to you a little bit about [Flynn]'s testimony. You heard him testify. [His counsel] questioned him on direct. [The prosecutor] questioned him on cross-examination. You heard his testimony. I listened to it very carefully, obviously. There [were] no inconsistencies. There was no impeachment, as we say. There was nothing presented to him or he was not questioned in any way as to some glaring differences in his statement. His statement was very authentic, very honest, and very direct.
>
> I can assure you, ladies and gentlemen, that after [Flynn] testified, that [the prosecutor] turned his file inside out to look for something that he could challenge him on, [Flynn] on. Okay?

N.T. Trial, 7/15/11, at 34-35.

In response to that argument by co-defendant's counsel, the prosecutor explained why he had not been able to impeach Flynn's testimony:

> MR. SCHULTZ: They said I couldn't impeach Flynn. Well, I never had anything to impeach him with. He never gave a statement.
>
> MR. TAUBER: Objection.
>
> MR. SCHULTZ: It's argument, Your Honor. It's fair, fair response.
> THE COURT: Overruled.
>
> MR. SCHULTZ: He never gave a statement. He never told anybody anything. Of course I didn't have a chance to

impeach him. He never wrote anything down. He never swore to tell the truth before. He never had to give his real name, his address. He never had to talk to the police before. . . .

*Id.* at 72.

With regard to the first reference to Flynn's post-arrest silence during his cross-examination, we conclude that the trial court committed no error. First, although Flynn claims that the court erred in failing to grant a mistrial, defense counsel did not, in fact, request a mistrial. Rather, counsel requested a curative jury instruction, which the court did, in fact, give in its jury charge. Finally, even if the court did err by not immediately providing a curative instruction, rather than waiting until the end of trial, any error was harmless given the overwhelming evidence of Flynn's guilt. **Mitchell**, **supra**. Specifically, at trial, Flynn readily admitted that: (1) he, along with his co-defendant, took Kornock's car, which contained her handbag, without her permission; (2) he was driving the car; (3) he led the police on a chase through residential neighborhoods; (4) in an effort to elude police, he drove the car down an embankment and crashed into a wooded area; and (5) he hid himself from police in a nearby swamp. The weight of this evidence, compared to any potential prejudicial impact of the brief reference to Flynn's failure to "tell any of the police officers what happened," leads us to conclude that any error in failing to provide an immediate curative instruction was harmless.

The prosecution also referenced Flynn's failure to give a statement to police in its closing argument. However, Flynn did not immediately request

a mistrial. In fact, after interposing an objection, Flynn's counsel advised the court that he was "not trying to make a big deal out of it" and was satisfied when the prosecutor agreed not to refer to Flynn's silence again. N.T. Trial, 7/15/11, at 78. "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed." Pa.R.Crim.P. 605(B). Here, Flynn did not immediately move for a mistrial after the offending portion of the Commonwealth's argument. Rather, he merely joined in co-defendant's request for a mistrial *after* the Commonwealth had concluded its closing statement. For this reason, Flynn's claim is waived.[6] **See Commonwealth v. Sasse**, 921 A.2d 1229, 1238 (Pa. Super. 2007) (mistrial properly denied where motion not made until after prosecution's closing argument).

Moreover, the trial court provided the jury with an instruction that Flynn's post-arrest silence could not be held against him:

> On another matter, with respect to Mr. Flynn, after Mr. Flynn was arrested he had an absolute right also not to speak to the

---

[6] Even if this claim were not waived, the prosecution's reference was a fair response to the argument of co-defendant's counsel, who, in his closing argument, had remarked upon the prosecution's failure to impeach Flynn. **See Commonwealth v. DiNicola**, 866 A.2d 329, 335-36 (Pa. 1998), applying **United States v. Robinson**, 485 U.S. 25 (1988) (no Fifth Amendment proscription precluding raising of silence in fair response to defense argumentation). In referring to the fact that Flynn had never before trial given a statement to police, the prosecutor was not suggesting Flynn's silence was proof of his guilt. Rather, the prosecutor was simply explaining to the jury his inability to impeach Flynn's testimony, in fair response to defense counsel's argument. **See id.**

- 10 -

police at all. So the fact that he did not give a statement to the police cannot be held against him for that failure to – for his exercising his constitutional right not to give a statement to the police.

N.T. Trial, 7/15/11, at 108. The law presumes that the jury follows the court's instructions. *Commonwealth v. Jordan*, 65 A.3d 318, 334 (Pa. 2013).

For the foregoing reasons, and particularly because Flynn was convicted only of those offenses he freely admitted to having committed, the trial court did not err in refusing to declare a mistrial.

Flynn next claims that the trial court abused its discretion in imposing a sentence that far exceeded the sentencing guidelines without stating sufficient reasons for doing so. This claim implicates the discretionary aspects of sentencing, which are not appealable as of right. An appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by satisfying a four-part test. *Commonwealth v. Prisk*, 13 A.3d 526 (Pa. Super 2011).

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id*. at 532 (citing *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006)). An appellate court will find a "substantial question" and

- 11 -

review the decision of the trial court only where an aggrieved party can articulate clear reasons why the sentence imposed by the trial court compromises the sentencing scheme as a whole. ***Commonwealth v. Tuladziecki***, 522 A.2d 17 (Pa. 1987).

Here, Flynn has properly preserved his claim and has included a Rule 2119(f) statement in which he asserts that, in sentencing him to an aggregate of ninety to one hundred eighty months' imprisonment, the court "did not offer any justification for [its] dramatic departure from the guidelines" and "never even acknowledged what the guidelines were" before imposing sentence. Brief of Appellant, at 9. This claim raises a substantial question. ***Commonwealth v. Rodda***, 723 A.2d 212 (Pa. Super. 1999) (when court deviates from sentencing guidelines, it must indicate that it understands suggested sentencing range). Accordingly, we will review the issue on its merits.

The imposition of sentence is vested in the discretion of the trial court, and should not be disturbed on appeal for a mere error of judgment but only for an abuse of discretion and a showing that a sentence was manifestly unreasonable. ***Commonwealth v. Walls***, 926 A.2d 957, 961 (Pa. 2007).

> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing

court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.

*Id.* at 961 (internal citations and quotation marks omitted).

Nevertheless, the trial court's discretion in matters of sentencing is not unfettered. The sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the protection of the public, the gravity of the offense in relation to impact on victim and community, and the rehabilitative needs of the defendant, as well as the sentencing guidelines. *Commonwealth v. Coulverson*, 34 A.3d 135, 144 (Pa. Super. 2011). The court is not bound by the sentencing guidelines. *Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007). However, when it chooses to depart from the guidelines, it must demonstrate on the record its awareness of the guidelines and, further, must provide a contemporaneous written statement of the specific reason or reasons for the deviation from the guidelines. *Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008). "Failure to comply shall be grounds for vacating the sentence or resentence and resentencing the defendant." 42 Pa.C.S.A. § 9721(b).

Here, Flynn had a prior record score of five and the offense gravity score was five as to theft and conspiracy and two as to fleeing police. Accordingly, a standard range guideline sentence for theft or conspiracy would have been twelve to eighteen months, plus or minus three. The standard range for fleeing police would have been one to nine months, plus

or minus three. At sentencing, Judge Lynn imposed sentences of thirty-six to seventy-two months' incarceration on the conspiracy conviction, forty-two to eighty-four months incarceration for theft, and twenty-four months for fleeing police. This aggregate sentence of ninety to one hundred eighty months far exceeded the prosecution's request, which was for an aggregate sentence of thirty-six to seventy-two months incarceration, plus a two-year probationary tail.

Flynn's sentences were all well in excess of the aggravated range of the sentencing guidelines. The court stated the following prior to imposing sentence:

> You know I have to consider certain things, but consider everything that's been presented to me, but one of the things also is that if I do confine them I have to consider the public protection which I did mention, the type of offense it is that we have here, and obviously the impact of, and what needs to be done by the defendants if they are incarcerated. I don't think probationary rehabilitation in either case would be appropriate at all because we are  -- I don't think probationary sentencing would be appropriate in either case because of the histories we went over a few moments ago.
>
> You have extensive criminal records and it's ongoing, it's not like several years in prison except when you are incarcerated so it's not like you have a chance to be free and productive [sic].

N.T. Sentencing, 9/15/11, at 71-72.

In its written opinion, the trial court also noted that it possessed and considered a presentence report, provided Flynn the right of allocution and considered the statutory factors. *See* Trial Court Opinion, 12/24/13, at 8-9. However, Judge Lynn failed to acknowledge, either at the time of sentencing

or in his Rule 1925(a) opinion, that Flynn's sentence substantially exceeded the guidelines.  Nor did he provide any specific reasons for imposing a non-guideline sentence, as required by section 9721(b) of the Sentencing Code.  Rather, the court discussed its belief that a mere probationary sentence would be insufficient and, without providing any reason other than Flynn's criminal record, bypassed the guidelines entirely and imposed a sentence significantly in excess not only of the aggravated range, but also of that requested by the Commonwealth.  Accordingly, we are constrained to vacate Flynn's sentence and remand for resentencing in accordance with the dictates of this memorandum.  ***Commonwealth v. Warren***, 84 A.3d 1092 (Pa. Super. 2014) (sentence vacated and case remanded for resentencing where court failed to evince an awareness of sentencing guidelines or explain its decision to deviate therefrom).

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/8/2014