J-S79005-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ISAIAH RANSOME, | |
| Appellant | No. 1920 EDA 2013 |

Appeal from the Judgment of Sentence entered June 21, 2013,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0005859-2007.

BEFORE: ALLEN, OLSON, and STRASSBURGER*, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED DECEMBER 19, 2014**

Isaiah Ransome ("Appellant") appeals from the judgment of sentence imposed after a jury convicted him of second-degree murder and related offenses.[1]  We affirm.

The trial court summarized the pertinent facts as follows:

> On October 3, 2006, at approximately 9:20 pm, Gary Roemhild, Kevin Roemhild, Keith Pena, and the decedent Michael Thierry, were standing on the front steps of 1500 Rosalie Street, where Gary rented an apartment.  As [they] were conversing with each other, [Appellant] and his [three co-defendants] all of whom were armed, approached them.

_____

[1] 18 Pa.C.S.A. § 2502(b).

*Retired Senior Judge assigned to the Superior Court.

Sensing that a robbery was about to occur, Gary attempted to run inside. He could not open the door before [Appellant,] who was holding a handgun, grabbed him and demanded that he empty his pockets. Keith Pena was standing on the steps next to Gary. He was robbed by [Appellant's] brother, Jerry Ransome, who brandished a .32 caliber revolver. Kevin Roemhild and Michael Thierry were at the bottom of the steps, near the pavement. Eric Gales pointed a .22 caliber rifle at Kevin Roemhild's head during the robbery. Sean Gordine confronted Michael Thierry.

Gary, Keith and Kevin each gave up their money, wallets and cell phones. Michael Theirry dropped his keys and cell phone to the ground and ran. At that point, all four defendants turned toward Thierry and started shooting. Thierry was shot in the head and groin and collapsed near the intersection of Rosalie and Horrocks Streets. As they fled, the defendants turned their weapons on the surviving victims and fired multiple gunshots at them.

Police arrived on the scene within a few minutes. There they found Thierry lying in the street. Thierry was taken to the hospital, where he died three days later.

Over the next several months, homicide detectives interviewed the victims and spoke with several witnesses. One of those witnesses was [Appellant's] brother, Jamil Ransome. He told police that [Appellant] owned a .357 [M]agnum and that he kept the gun at his girlfriend's house. On February 5, 2007, police executed a search warrant at the home of [Appellant's] girlfriend and recovered a .357 Magnum.

On February 7, 2007, [Appellant] was arrested. He did not give a statement to police. However, in a separate investigation that occurred four months before this incident, [Appellant] told police that he owned a .357 Magnum and that he had gotten rid of it. Appellant also acknowledged during the prior investigation that ammunition discovered in his bedroom was his.

At trial, two surviving victims (Gary and Kevin Roemhild) and multiple bystanders who observed the robbery and the subsequent shooting positively identified

- 2 -

[Appellant] as one of the shooters. The Commonwealth also presented testimony from several police officers and the medical examiner, ballistic evidence linking the defendants to the crime, inculpatory statements [Appellant] made to family (Jamil Ransome) and friends (Deante Smith) after the shooting, and a cell phone video depicting all four defendants playing Russian roulette with a .32 caliber handgun. Appellant did not have a license to carry a firearm.

Trial Court Opinion, 3/10/14, at 2-4 (citations omitted).

The trial court summarized the pertinent procedural history as follows:

The defendants were jointly tried by jury before the Honorable Carolyn Temin. On June 13, 2008, the jury returned a partial verdict finding all four defendants not guilty of first degree murder, but deadlocking on the remaining charges.

A second jury trial was set to commence in May of 2009. Prior to the start of trial, the Commonwealth asked Judge Temin to reconsider several evidentiary rulings she had made prior to [Appellant's] first trial. Specifically, the Commonwealth sought the introduction of cell phone records and writings made by one or more of the defendants that had been ruled inadmissible at the previous trial. Judge Temin denied the Commonwealth's Motion to Reconsider. The Commonwealth appealed Judge Temin's ruling to the Pennsylvania Superior Court, which vacated her Order. On March 3, 2011, defense counsel field a Petition for Allowance of Appeal in the Pennsylvania Supreme Court. This Petition was denied on June 2, 2011. Appellant's case was then scheduled for retrial.

On December 14, 2012, at the conclusion of a second jury trial, the jury found [Appellant] guilty of second degree murder, four counts of robbery (F-1), three counts of aggravated assault (F-1), criminal conspiracy, possession of an instrument of crime and violating §§ 6106 and 6108 of the Uniform Firearms Act.

Appellant subsequently filed a post-verdict motion to have counsel removed from his case. [Judge Temin retired prior to sentencing Appellant and the case was

administratively reassigned to the Honorable Benjamin Lerner, S.J.] On June 21, 2013, this court denied [Appellant's] motion and sentenced him to a mandatory term of life imprisonment on the second degree murder bill, and concurrent prison terms of ten (10) to twenty (20) years on each of the robbery and aggravated assault bills and two-and-one-half (2½) to five (5) years on the § 6106 bill. No further penalty was imposed on the remaining bills.

Appellant did not file post-sentence motions. This timely appeal followed.

Trial Court Opinion, 3/10/14, at 1-2 (footnote omitted). Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

I. Is [Appellant] entitled to an arrest of judgment with respect to his convictions for murder of the second degree, aggravated assault (three counts), robbery (four counts), possessing an instrument of crime, carrying a firearm without a license and carrying a firearm on a public street since the evidence is insufficient to sustain the verdicts as to guilt as the Commonwealth failed to sustain its burden of proving [Appellant's] guilt beyond a reasonable doubt?

II. Is [Appellant] entitled to a new trial as a result of the trial court's ruling that allowed the Commonwealth to play a videotape [sic] during trial?

III. Is [Appellant] entitled to a new trial as a result of the trial court's ruling that allowed the Commonwealth to present testimony identifying [Appellant] from a videotape?

IV. Is [Appellant] entitled to a new trial as a result of the trial court's denial of his motion for a mistrial made during the prosecutor's improper summation to the jury?

Appellant's Brief at 5.

Appellant first challenges the sufficiency of the evidence supporting all of his convictions. Our standard of review is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Jones***, 886 A.2d 689, 704 (Pa. Super. 2005).

In rejecting Appellant's sufficiency challenges, the trial court properly identified each element of the criminal offenses of which Appellant was convicted, and explained why the evidence presented by the Commonwealth proved Appellant's guilt, as an accomplice and co-conspirator, beyond a reasonable doubt. ***See*** Trial Court Opinion, 3/10/14, at 5-9. Our review of the record supports the trial court's conclusions.

Appellant's argument in support of his sufficiency challenges consists largely of citation to standards of review and conclusory statements based

on these standards. *See* Appellant's Brief at 13-18. Appellant does not specify any particular element of any of the offenses and explain why, based on the facts presented, the Commonwealth failed to meet its evidentiary burden. Our review of the record refutes Appellant's claim that the Commonwealth's evidence failed to establish his identity as a shooter, as well as his claim that there was no physical evidence linking him to the crimes. The facts, as cited by the trial court, overwhelmingly establish Appellant's culpability. To the extent Appellant challenges the credibility of any of the testimony or other evidence presented against him, he challenges the weight rather than the sufficiency of the evidence, and such claim is readily refuted by the record. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (delineating distinctions between challenge to weight and sufficiency of the evidence).

Appellant's next two issues involve the Commonwealth's playing for a jury a cell phone video depicting five individuals playing Russian roulette. In his second issue, Appellant asserts that the trial court erred in allowing the Commonwealth to play the video because it was irrelevant, improperly constituted evidence of "prior bad acts," and was otherwise unduly prejudicial. *See* Appellant's Brief at 24-29. In his third issue, Appellant asserts that the trial court further erred in permitting a testifying police detective to identify him as one of the participants in the video. *See*

Appellant's Brief at 30-33.[2]

Our Supreme Court has summarized:

> Appellate courts typically examine a trial court's decision concerning the admissibility of evidence for abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Typically, all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility. **See** Pa.R.E. 401; Pa.R.E. 402[.]

***Commonwealth v. Dillon***, 925 A.2d 131, 136-37 (Pa. 2007). "Evidence is admissible if it is relevant—that is, if it makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact." ***Commonwealth v. Wynn***, 850 A.2d 730, 733 (Pa. Super. 2004) (citations omitted).

In rejecting Appellant's argument regarding the admission of the cell phone video, the trial court explained:

> Whether relevant evidence is unduly prejudicial is, in part, a function of the degree to which it is necessary to

---

[2] We reject the Commonwealth's claim of waiver. Even though the defense lodged no objection when the Commonwealth played the video for the jury, the defense raised their objections during the trial court's hearing regarding the Commonwealth's motion to reconsider its prior ruling on a motion *in limine* filed by the defense prior to Appellant's first trial. **See** ***Commonwealth v. Stokes***, 78 A.3d 644, 652 (Pa. Super. 2013).

prove the case of the opposing party. Here, the Commonwealth was required to prove that a criminal conspiracy existed, and that the defendants either had access to or used weapons as part of that conspiracy. The cell phone video was relevant because it demonstrated [Appellant's] familiarity with and prior usage of guns. It also supported the Commonwealth's contention that [Appellant] knew the co-defendants, and that their association as a group involved in the possession of guns— factors that were relevant to the existence of a criminal conspiracy.

There is no doubt that the cell phone video was prejudicial to the defense. Nevertheless, it was not unduly prejudicial to the defense. The trial court did not err in allowing the admission of this evidence. Appellant's claim has no merit.

Trial Court Opinion, 3/10/14, at 10-11.

Our review of the record supports the trial court's conclusions. **See**, **e.g.**, **Commonwealth v. Antidormi**, 84 A.3d 736, 752 (Pa. Super. 2014) (reiterating that courts are not required to sanitize a trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant).

Regarding Appellant's third issue, the trial court concluded that the detective's identification testimony "indeed infringed upon the jury's function as fact finder and should not have been permitted." Trial Court Opinion, 3/10/14, at 11. Nevertheless, given the overwhelming evidence of guilt, the trial court concluded that any such error was harmless. **See id.**, at 11-12.

We note that this Court may affirm the trial court's determination on any grounds. **Commonwealth v. Gatios**, 76 A.3d 44, 62 n.14 (Pa. Super. 2013). Here, we conclude that Judge Temin properly permitted the

detective to testify to the identification of the individuals depicted in the cell phone video under Rule 701 of the Pennsylvania Rules of Evidence. In accordance with this rule, the detective's testimony was 1) "rationally based on [his] perception"; 2) "helpful to clearly understand" the detective's testimony and "in determining a fact in issue"; and 3) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Pa.R.E. 701. **See generally**, **Commonwealth v. Blessitt**, 825 A.2d 1215 (Pa. Super. 2004) (*en banc*).

Appellant's argument within his brief that the detective's identification testimony constitutes "expert opinion" under Pa.R.E. 702 is inapt. Our review of the record supports the trial court's conclusions that "the properly admitted evidence and testimony against [Appellant] and his co-defendants overwhelmingly demonstrated their guilt." Trial Court Opinion, 3/10/14, at 12. Thus, the trial court also correctly concluded that "the use of the cell phone video and the [detective's] testimony was indeed cumulative of other evidence presented by the Commonwealth[,]" and that "any potential prejudice caused by the usage of the cell phone video was insignificant in comparison to the evidence of [Appellant's] guilt." Trial Court Opinion, 3/10/14, at 12. Appellant's third issue entitles him to no relief.

In his fourth and final issue, Appellant argues that he is entitled to a new trial because the trial court erred in denying his motion for mistrial after comments made by the prosecutor during the Commonwealth's closing

argument improperly shifted the burden of proof to the defense. **See** Appellant's Brief at 34-42. We disagree.

"The decision to declare a mistrial is within the sound discretion of the court and will not be reversed absent a flagrant abuse of discretion." **Commonwealth v. Bracey**, 831 A.2d 678, 682 (Pa. Super. 2003) (citation omitted). "A mistrial is an 'extreme remedy . . . [that] must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial.'" **Id.**

Our standard of review for a claim of prosecutorial misconduct is limited to "whether the trial court abused its discretion." **Commonwealth v. Harris**, 884 A.2d 920, 927 (Pa. Super. 2005) (citation omitted), *appeal denied*, 928 A.2d 1289 (Pa. 2007). In considering such a claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. **Id.** This Court has observed:

> Not every unwise remark on a prosecutor's part constitutes reversible error. Indeed, the test is a relatively stringent one. Generally speaking, a prosecutor's comments do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward Appellant so that they could not [weigh] the evidence objectively and render a true verdict. Prosecutorial misconduct, however, will not be found where the comments were based on evidence or proper inferences therefrom or were only oratorical flair. In order to evaluate whether comments were improper, we must look to the context in which they were made.

*Id.* Moreover, "the prosecutor is permitted to respond to defense arguments and is free to present his or her case with logical force and vigor." ***Commonwealth v. Koehler***, 737 A.2d 225, 240 (Pa. 1999) (citation omitted).

As noted by the trial court, "[d]uring closing arguments . . . counsel for co-defendant Sean Gordine[] suggested that the police somehow improperly influenced the witnesses to identify the defendants." Trial Court Opinion, 3/10/14, at 13 (citing N.T., 12/13/12, at 58-89). The prosecutor responded to this argument during closing:

> [**THE PROSECUTOR**:]
>
> Consider the identification procedure. Consider how [the police] went about doing it. They put eight faces of similarly looking individuals on a piece of paper. They didn't collectively huddle with all the witnesses. They were separate. They showed it to [the witnesses]. And said if anyone could recognize any of the assailants. Anyone involved. There was no rush to judgment. Jamil [Ransome] was in those photo spreads. [The police] showed [the photo spreads] to the victims.
>
> And is it any coincidence that out of 40 faces, five sets of eight, five times eight, 40 faces, only these four defendants were identified. Only these four. The other 36 faces were never selected by any of the victims or any of the eyewitnesses. What does that tell you? What are the chances? You do the math. One in eight. One in eight.
>
> An identification gets made. One in eight. There was no guessing. There was no pointing the finger. If [the police] wanted to put a case on someone, they would have said, Hey, you know, what about that guy? Hey, you know, what about that guy? No. There are blanks here for people that didn't have that vantage point. There is no putting a case on anyone.

- 11 -

I asked every single detective, you know, you saw the whole squad, when the detectives got up there, I presented them with the witness statements. Remember the first thing I asked the detective, I said [d]id you take the statement from Gary Roemhild? Did you show the photo spreads to this witness, to that witness, to this witness, to that witness?

And [Sean Gordine's counsel] wants to make a big stink about how the detectives manipulated witnesses and coerced the witnesses and cannot trust the investigation. But did he ask any single one of those detectives anything about when they showed photo spreads to the witnesses? Did he ask anybody anything about whether someone was manipulated? Did you hear any of these witnesses -- I will get to Deshawn [Williams] because he was friends with [the defendants]; he'd got reason [sic] -- any of these people say that they were manipulated and they were told who to point the finger to? That would have come out; you would have heard it.

Sometimes it's the questions that are asked and sometimes it's the lack of questions because it's really easy for a defense attorney to just gloss over something and get up in closing argument and throw out a bunch of theories that have not been substantiated and they didn't try to substantiate that - -

[**GORDINE'S COUNSEL**]: Objection.

**THE COURT**: The jury will disregard everything that [the prosecutor] said about what the defense lawyers did or didn't do. You have been told a number of times that the burden is on the Commonwealth to prove its case beyond a reasonable doubt. The defense lawyers have no duty to ask any special questions or any specific questions. It's fair for the [prosecutor] to criticize an argument. He can't do it in a way to suggest that the defense lawyers had some duty to ask certain questions about things.

You are the jury. You will judge whether you agree with the arguments of the defense or the Commonwealth or not. Based upon your assessment of the evidence and your decision about its truth and accuracy.

Please continue.

[**THE PROSECUTOR**]: I wasn't trying to burden shift. They have no burden of proof. The burden is always with me. It's my responsibility to prove the defendants guilty. Please do not misinterpret what I'm saying. What I am saying is [Gordine's counsel] presents to you an argument that he has not substantiated, some speculation, some theory - -

[**GORDINE'S COUNSEL**]: Objection.

[**THE PROSECUTOR**]: - - that is trying to fly this in front of you - -

[**JERRY RANSOME'S COUNSEL**]: I join in the objection.

[**GORDINE'S COUNSEL**]: Objection.

**THE COURT**: Can I see counsel at sidebar, please?

(*Whereupon, the following took place at sidebar in the jury's presence*)

[**CORDINE'S COUNSEL**]: I have a motion for mistrial with prejudice.

[**JERRY RANSOME'S COUNSEL**]: I join.

[**GALES'S COUNSEL**]: I join, as well.

[**THE PROSECUTOR**]: The jury is right there.

**THE COURT**: The motion for a mistrial is denied.

[Prosecutor], please, you may comment on the evidence. You can say that the arguments that have been put forth by defense counsel are not supported by the evidence. You can't intimate that they have any duty to make any kind of argument or ask any kind of question or anything like that. That's totally, totally improper.

I think that I told the jury that very strongly, but then you did go back and start to do it again. Stay away from the arguments of defense counsel. Argue your case.

[**APPELLANT'S COUNSEL**]: I join in the motion, Judge.

- 13 -

    **THE COURT**: I'm assuming that all defense counsel does.

    [**GORDINE'S COUNSEL**]: Yes. I ask you to give another instruction.

    (*End of sidebar discussion*)

    **THE COURT**: Just in case if anybody didn't understand my first instruction, I want to make this very clear to you that one, the defense has absolutely no burden to do anything. That the [prosecutor] should confine his comments to the evidence and not to criticizing the arguments of defense counsel. It's up to you to evaluate, you, the jury, to evaluate the arguments of counsel and decide which arguments appeal to your reason and your judgment and which don't.

    But I remind you again that nothing said by any of the lawyers is evidence. Nothing said by the lawyers is evidence.

    You may continue in accordance with my instructions.

N.T., 12/13/12, at 146-152.

    In rejecting Appellant's claim, the trial court explained:

    It is clear that the prosecutor's remarks, while not wise, were made solely for the purpose of addressing the assertion – made by Sean Gordine's counsel – that [the] identification process was improperly influenced by the police. In this context, the remarks were not made for the purpose of shifting the burden of proof to the defendants. Nor were they made with the intent to prejudice the jury or engender hostility or bias towards the defendants. Furthermore, in light of the court's timely instructions to the jury, [Appellant] cannot claim that he was prejudiced by the [prosecutor's] remarks.

Trial Court's Opinion, 3/10/14, at 14.

    Our review of the record and pertinent case law supports the trial court's conclusion that the objectionable statements made by the prosecutor

were not intentional, and that the trial court's clear instructions to the jury cured any prejudice and ensured Appellant a fair trial. ***See***, ***e.g.,*** ***Koehler***, 737 A.2d at 241 (explaining that a prosecutor's remark that he did not believe the defendant and calling him a liar was proper when comments were made in response to defense counsel's closing regarding the credibility of witnesses and was supported by the evidence); ***see also*** ***Commonwealth v. O'Hannon***, 732 A.2d 1193, 1196 (Pa. 1999) (citation omitted) (explaining, "[a]bsent evidence to the contrary, the jury is presumed to have followed the trial court's instructions").

In sum, the Commonwealth presented sufficient evidence to support Appellant's convictions, the trial court did not erroneously permit the admission of video and testamentary evidence during trial, and the trial court correctly denied Appellant's motion for mistrial during the Commonwealth's closing argument. We therefore affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Strassburger joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/19/2014</u>