J-A02043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY M. MCGOFF | : | |
| | : | |
| Appellant | : | No. 224 MDA 2018 |

Appeal from the Judgment of Sentence March 7, 2017
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0000433-2015

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:　　　　**FILED: MARCH 25, 2019**

Appellant Timothy M. McGoff appeals from the judgment of sentence following his jury trial convictions for two counts each of attempted homicide, aggravated assault with a deadly weapon, aggravated assault, simple assault, recklessly endangering another person, terroristic threats, and one count each of theft by unlawful taking, unauthorized use of a motor vehicle, disorderly conduct, reckless driving, and driving under the influence.[1]  Appellant asserts that the evidence was insufficient to convict him of two counts of attempted homicide, and one count of aggravated assault with a deadly weapon and aggravated assault.  Additionally, Appellant asserts that the Commonwealth

_____

[1] 18 Pa.C.S. §§ 901, 2501, 2702(a)(4), 2702(a)(1), 2701(a)(3), 2705, 2706(a)(1), 3921(a), 3928, 5503(a)(1), 3736, and 3802(a)(1), respectively.

impermissibly used evidence of his prior bad acts and that his sentence is excessive. We affirm.

The trial court summarized the relevant factual background of this matter as follows:

> Leslie Bacinelli testified that she had been in a relationship with [Appellant] for approximately thirteen years and they had two children, Colin, who was seven years old at the time of the incident, and Thomas, [who] was one year old. Leslie stated that she had ended her relationship with [Appellant] in August of 2014 and relocated from their shared home to her parents' home. She and [Appellant] maintained a mutual custody agreement wherein [Appellant] had visitation every other weekend from Friday evening until Sunday evening, as well as two weekdays. Leslie stated that in August of 2014, she reconnected with Craig Hoover, a high school friend who had moved to New Hampshire, and she entered into a relationship with Craig in September 2014. Craig similarly had two children, daughters who were then ages fourteen and eleven. Craig and his daughters were planning to visit Leslie the week of January 3, 2015, when [Appellant] had custody of their children. Leslie asserted that [Appellant] had plans on Friday, so he arranged to pick up the children on Saturday instead of Friday. Leslie stated that when her older son Colin realized that Craig and his daughters were in town, he preferred to stay with Leslie. Leslie testified that this resulted in a telephone conversation with [Appellant] about Colin's preference; in response, [Appellant] made disparaging remarks about her. After the conversation ended, [Appellant] called back to speak to Colin. She recalled that [Appellant] was very pleasant while speaking to Colin; nevertheless, when she returned to the phone, [Appellant] stated that she could have the kids tonight "because after today and after tonight it's not going to matter much to you anyway." Leslie's statements were corroborated by photographs showing that she texted [Appellant] that morning to inform him that Colin did not want to leave. The Commonwealth introduced additional photographs of text messages from [Appellant] after the phone conversation had ended. Leslie testified that she and Craig and their respective children continued their day. At approximately 6:15 p.m., [Appellant] sent another unprovoked text message stating, "You had to go to New Hampshire to find a man because

- 2 -

everyone around here knows how gross you are inside. Scumbag boyfriend has no idea." Leslie explained that she returned to her parents' house with Craig and the children before she and Craig left to purchase a Red Box movie and ice cream at Bill's Supermarket at approximately 7:45-7:50 p.m. Leslie then testified in detail regarding the events of the night.

She recalled leaving with Craig in his vehicle [to go to the supermarket] and not seeing any other vehicles on Quicktown Road. Craig turned left onto Aberdeen Road and they noticed a vehicle's headlights appear behind them. Craig pulled over and let the vehicle behind them pass. As they reached the bottom of Aberdeen Road, at the intersection of Aberdeen and Reservoir streets, Leslie noticed the same vehicle in [a] dirt pull-off section. They continued on the route to Bill's Supermarket with the vehicle still following. Leslie testified that they entered the plaza and parked in front of the Red Box movie rental. At the same time, Leslie received text messages from [Appellant] stating that he wanted to say goodnight to the kids and asked why she would not let him. She testified that she told him that she was out getting a movie and to call her parent's house because the kids were home. [Appellant] replied, "Did, scumbag." She and Craig then picked out a movie and went into the supermarket. Upon leaving, Leslie noticed the same vehicle she thought was following them parked a few spaces away. She testified that she did not think anything of it because it was the only supermarket in the area. They then went to Dunkin Donuts and noticed the same vehicle. She and Craig decided to travel off of their planned route to test if the vehicle was following them. Craig then drove toward Jubilee Road, a dark road without much traffic. The vehicle followed, and Leslie recalled the statements made by [Appellant] earlier, suspecting that [Appellant] was in the vehicle. Leslie called her father and the police. Leslie testified that the vehicle continued to follow. Leslie testified that she did not return home because she did not want to place the children in danger. Meanwhile, Leslie called 911 and arranged to meet Officer [Matthew] Cianfichi at North Pocono Intermediate School. Leslie testified that Craig drove through a vehicle wash stall to turn around, as the other vehicle went through the stall next to them, revved the engine, struck their vehicle, and pushed them into the oncoming traffic lane. Craig straightened out his vehicle, however [Appellant, who was in the other vehicle] revved the engine and struck them a second time; Leslie testified that the violent impact caused her to flail forward. Their vehicle veered off the road as [Appellant's] vehicle passed

them, turned around and [Appellant] drove his vehicle directly into Leslie's side of the vehicle. The impact pinned Craig's side of the vehicle against the guardrail and the airbag went off.

After crashing into the guardrail Craig's door was jammed shut. Leslie testified that [Appellant] approached Craig's side of the vehicle, pounded on the roof and screamed, "Fuck." Leslie identified [Appellant] by his voice. She then kicked open the dented passenger door and exited the vehicle. Leslie stated that she saw [Appellant] standing under the streetlight with a knife in his hand and threaten[]: "I'm going to fucking kill both of you." She ran but [Appellant] grabbed her by the ponytail, grabbed her face with his left hand, and used the knife to slice her face from lip to cheek. Again she attempted to run, but he continued to grab her ponytail, yank her head and threaten: "Say goodbye, this is your last fucking breath." As [Appellant] dropped Leslie, he cut her sweatshirt and turned his attention to Craig and the three of them fell to the ground in a struggle. Leslie testified that [Appellant] yelled: "I'm going to fucking kill both of you." She observed [Appellant] chase Craig around [a parked vehicle nearby] about three times before Craig fell. Leslie testified that she observed [Appellant] with the knife in his hand when chasing Craig toward the entrance of I-380. In support of her testimony, Leslie identified the knife that [Appellant] cut her with, as well as the scarf and sweatshirt she was wearing. Leslie testified that as a result of the incident her facial injuries required surgical repair at the hospital.

Victim Craig Hoover corroborated Leslie's testimony[.]

* * *

Affiant [Officer] Cianfichi of the Moscow Borough Police Department testified that on January 3, 2015, he responded to a call at the Market Street Inn in Moscow for the report of a stolen vehicle. Officer Cianfichi corroborated that Ryan Butler's 2002 Buick Rendezvous SUV was stolen. While speaking with Ms. Butler, Officer Cianfichi received a dispatch call regarding a female being followed near North Pocono Intermediate School. Shortly thereafter, Officer Cianfichi received another call that the same female was now being run off the road by another vehicle. Office Cianfichi responded to the scene and observed a white Subaru and a gold Buick SUV crashed at the intersection of 690 and the I-380 ramp. Officer Cianfichi testified that the Subaru had front end damage and a deployed airbag, trunk pushed in and frame

damage; the Buick had front end damage, a missing bumper and a damaged headlight. Officer Cianfichi noted that the white Subaru was pushed into the guardrail with the passenger side door open. During the investigation, Officer Cianfichi determined that Craig owned the white Subaru and Ryan Butler owned the gold Buick. Officer Cianfichi testified that upon arrival[,] witnesses were screaming and pointing at the two men on the on ramp. Officer Cianfichi stated that he held [Appellant] at taser-point until Officer [Stephen] Price arrived. The officers recovered a bloody knife from [Appellant's] pocket. Officer Cianfichi testified then he placed him the backseat of the police vehicle and **Mirandized**[2] [Appellant]. Officer Cianfichi recalled that [Appellant] admitted "you got me" and that he was going to kill Leslie and Craig. Officer Cianfichi stated that [Appellant] further admitted that he stole the gold Buick from the Market Street Inn. Officer Cianfichi also testified that [Appellant] disclosed that there was a loaded rifle and soda bottles [filled] with gasoline on the front seat of the stolen Buick. The Commonwealth produced the rifle seized in the investigation and [it was] admitted . . . into evidence.

Officer Cianfichi testified that in the course of his investigation he executed a search warrant on [Appellant's] cell phone. Accordingly, the Commonwealth introduced photographs of text messages between [Appellant] and Leslie. Officer Cianfichi additionally testified that he drove the route the victims reported taking and tracked it with his odometer at approximately 19.7 miles. He stated that Officer Price collected Leslie's scarf, as well as statement from Leslie and Craig. Officer Cianfichi explained that the cut mark on Leslie's sweatshirt went unnoticed, but when she brought the sweatshirt to the police station, it was tagged and put into evidence. Officer Cianfichi related that .22 caliber bullets and a lighter [from Appellant's pockets] were provided to him by Sergeant [Bill] Morgan. Officer Cianfichi further described the procedure of collecting and preserving evidence at the Moscow Borough Police Department.

[Appellant] presented several character witnesses. The Appellant admitted that he stole the Buick SUV and that he drove the stolen vehicle on January 3, 2015. He admitted that he followed Craig's vehicle. [Appellant] also admitted to texting Leslie while following Craig's vehicle. Nevertheless, he admitted that he broke his

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

pursuit to retrieve a rifle, bullets, and gasoline from his home. Ultimately, he resumed following Craig and Leslie after seeing them at Bill's Supermarket. [Appellant] described his mindset as angry and livid and wanting to physically confront Craig Hoover. He admitted to intentionally hitting Craig's vehicle with the stolen Buick SUV multiple times. [Appellant] further admitted to exiting the vehicle with his knife in his hand. [Appellant] stated that Craig pushed Leslie at him which caused them to fall. At this point, [Appellant] claimed that he picked up the knife and put it in his pocket. [Appellant] admitted to running after Craig with the intention of physically fighting him. When he saw the police lights, [Appellant] was pursuing Craig. [Appellant] agreed that he spoke to Sergeant Morgan, but denied admitting any intent. Additionally, [Appellant] conceded that he may have said "I'm going to fucking kill you."

Trial Ct. Op., 5/11/18, at 3-7, 12-15 (citations and footnote omitted). Based upon these facts, Appellant was charged with the aforementioned offenses.

Appellant's case proceeded to a jury trial beginning on November 15, 2016. During the third day of trial, the Commonwealth informed the trial court and Appellant's counsel that it had obtained a 2006 Pennsylvania State Police report documenting an incident between Appellant and Ms. Bacinelli. N.T. Trial, 11/17/16, at 4. In the 2006 incident, Appellant had allegedly threatened to, among other things, kill Ms. Bacinelii and stab her then-boyfriend in the neck with a three-inch knife. *Id.* at 5.

The Commonwealth sought to use the 2006 report as a basis to question Appellant's character witnesses on their awareness of the incident. *Id.* Initially, the Commonwealth acknowledged that it obtained the report mid-trial and had it obtained the report earlier, the Commonwealth would have filed a motion to have the report admitted under Pennsylvania Rule of

Evidence 404(b)[3] during the Commonwealth's case-in-chief.  *Id.* at 4.  The Commonwealth, however, posited an alternative argument: if Appellant's counsel opened the door during his cross-examination of Ms. Bacinelli, then the Commonwealth would be able to redirect Ms. Bacinelli with the contents of the report.  *Id.* at 5.

Appellant's counsel maintained that because Appellant was not arrested, let alone convicted, as a result of the 2006 incident, no character witness would even be aware of the report.  *Id.* at 6-7.  Counsel then objected generally on the basis that the Commonwealth was aware that Appellant's defense strategy was grounded in character and it was "preposterous and completely unfair" that the Commonwealth would be permitted to use the report to impeach Appellant's character witnesses.  *Id.* at 9.  The Commonwealth reiterated that if Appellant's counsel "opens the door on cross" on Ms. Bacinelli, then it should have the ability to redirect her on the 2006 report.  *Id.* at 10.  The court observed that if counsel "opens the door to

_____

[3] In pertinent part:

> *(3) Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b)(3).

question, he opens the door." *Id.* The court however, deferred its ruling. *Id.* at 11.

Later, mid-trial, at sidebar and out of the jury's presence, Appellant's counsel requested clarification of the court's ruling:

> [Appellant's counsel]: Yes, I want a clarification on the [c]ourt's ruling on the 2006 state police report.
>
> THE COURT: We'll wait to see if the door gets opened and make a determination then. As to the character witnesses, there will be not allowed any cross on that.
>
> [Appellant's counsel]: So only if I open the door on cross-examination?
>
> THE COURT: Correct.
>
> [Appellant's counsel]: Otherwise, inadmissible.
>
> THE COURT: Correct. Now, that could be reopened depending on what happens with the witnesses.
>
> [Appellant's counsel]: Yeah, of course.

*Id.* at 79.

Later, Appellant's character witnesses testified without the Commonwealth referring to the 2006 report or Appellant's counsel "opening the door." Then Appellant himself testified, implying it was an accident. *Id.* at 233. After the close of Appellant's direct examination, the following sidebar occurred outside of the jury's presence:

> [Commonwealth]: Your Honor, I think the fact that [Appellant] is almost saying that this was like an accident or some sort that I have the ability to—he has opened the door to the 2006 [report].
>
> THE COURT: Yeah.

- 8 -

[Appellant's counsel]: Your Honor, there is no evidence he knew about that.

THE COURT: Absolutely. I agree it is allowed.

[Commonwealth]: So I just want to be able to know that I am able to cross on that.

[Appellant's counsel]: Your Honor, there is no evidence that he knew about this. You said it was only if I opened the door through cross of her[, *i.e.*, the victim].

THE COURT: No, I said or other [sic] way of opening the door. . . .

*Id.* at 234-35.

Subsequently, the trial court stated that if Appellant denies knowledge of the 2006 incident, the Commonwealth could not use the report to impeach him:

THE COURT: The way in which you use that if [Appellant] denies it you can't use the collateral piece.

[Commonwealth]: No, I understand.

THE COURT: Do you understand that?

[Commonwealth]: Right, I understand that.

THE COURT: It can be done in regard to was there an incident and when it was, but you can't give him the [2006 report] and have him read it because that—

[Commonwealth]: No, no.

[Appellant's counsel]: If I may renew my objection, . . . he is going to say that and this is the problem. I haven't had time to even talk—[Appellant] is being told this, he has heard this for the first time today so, your Honor, unfair surprise. If he is going to use it, we need to recess for the today [sic] so I can talk to him about this.

\* \* \*

- 9 -

THE COURT: The door opened itself. I told you if the door opened it was going to be allowed.

[Appellant's counsel]: Your Honor, but I need to renew my objection again. They had this case for two years.

THE COURT: Right. That's already been answered. I told you that once that the door was opened.

*Id.* at 237-39.

During the Commonwealth's cross-examination of Appellant, the following exchange occurred, after Appellant again confirmed the incident was an accident:

[Commonwealth]. You ever threaten[ed] Leslie before?

[Appellant]. Never.

[Commonwealth]. Never, ever?

[Appellant]. Not that I recall.

[Commonwealth]. How about Leslie or any of her boyfriends?

[Appellant]. Not that I recall.

[Commonwealth]. Not that you recall. Do you remember a 2006 incident in March, St. Patrick's Day weekend, parade weekend in 2006, where you are calling her over and over and over again and leaving voicemails?

[Appellant]. I don't.

[Commonwealth]. You don't recall that – you don't recall tell[ing] her boyfriend and telling her that he was going to – you were going to stick a three-inch blade in her neck?

[Appellant]. No.

[Commonwealth]. And that "F" you, you're are [sic] a dead man –

[Appellant]. No.

- 10 -

[Commonwealth]. – to her then boyfriend in 2006? You don't recall that incident whatsoever?

[Appellant]. No. Who was her boyfriend in 2006?

[Commonwealth]. I'm asking you.

[Appellant]. I have no idea.

[Commonwealth]. I ask the questions here, sir.

[Appellant]. I'm sorry.

[Commonwealth]. You don't recall that at all?

[Appellant]. I'm trying to recollect. I don't.

[Commonwealth]. You don't remember Pennsylvania State Police Officer –

[Appellant's counsel]: Okay. Asked and answered.

THE COURT: Asked and answered. Move on.

[Appellant's counsel]: Objection, your Honor, sidebar.

(Discussion held at sidebar as follows:)

[Appellant's counsel]: Your Honor, I want a mistrial for prosecutorial misconduct. He just said with a piece of paper in his hand, You don't remember a Pennsylvania State police officer?"

And he knows damn well that it says in the report that a police – a state police officer never talked to [Appellant] so he knows that –

THE COURT: He doesn't know that. That's not the way it reads. In fact, in there it reads at the end it says the father says he is going to have him contact the state police.

[Appellant's counsel]: And he says we couldn't find [Appellant], we never got in touch with him.

THE COURT: Denied.

*Id.* at 263-66. Under the circumstances and the court's prior ruling, given Appellant's denial, the Commonwealth never introduced the 2006 report into evidence. *See id.*

- 11 -

At the conclusion of the trial, the jury convicted Appellant of all counts. The trial court sentenced Appellant on March 7, 2017, to an aggregate sentence of 256 to 612 months' incarceration. Appellant filed a timely post-sentence motion on March 17, 2017, requesting modification of his sentence. Thereafter, because Appellant had obtained new counsel shortly before sentencing, counsel requested an extension of time to file additional post-sentence motions. This trial court granted the request and ordered Appellant to file them by April 26, 2017. Appellant, however, filed post-sentence motions on May 2, 2017.[4]

In his post-sentence motions, Appellant asserted that his sentence was excessive, the Commonwealth was permitted to cross-examine Appellant regarding the 2006 Pennsylvania State Police report improperly, and the evidence was insufficient to convict him of each offense. *See* Post-Sentence Mot., 5/2/17, at ¶¶ 27-31, 43-47, 54. The trial court conducted a hearing on the post-sentence motions on June 9, 2017. The post-sentence motions were denied by operation of law on December 28, 2017. Appellant filed a timely notice of appeal on January 26, 2018.

_____

[4] The Commonwealth filed a response that did not acknowledge any untimeliness, and following a hearing, the trial court denied the motions by operation of law. Accordingly, we conclude Appellant timely appealed from the judgment of sentence following the denial of the post-sentence motions by operation of law.

After receiving an extension of time to file a Pa.R.A.P. 1925(b) statement, Appellant filed a timely concise statement of errors complained of on appeal, raising, among other issues, the following:

a. The Trial Court erred in not granting a new trial based upon insufficiency of evidence. The verdict rendered in this matter is so contrary to the evidence presented that it shocks the sense of justice and requires the granting of a new trial imperative so that justice may be given another opportunity to prevail.

b. Moreover, the underlying convictions in this matter are against the weight of the evidence in that there was insufficient evidence to prove the Commonwealth's allegations and theory of the case. There was not sufficient evidence presented to enable the fact - finder to find every element of each crime beyond a reasonable doubt.

Pa.R.A.P. 1925(b) Statement, 3/23/18, at ¶¶ 4-5. The trial court filed a responsive opinion under Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

1. Whether the Commonwealth presented insufficient evidence, as a matter of law, to support a verdict of guilty in relation to two (2) [c]ounts of [c]riminal [a]ttempt to [c]ommit [c]riminal [h]omicide, with respect to victims Leslie Bacinelli and Craig Hoover; one (1) count of [a]ggravated [a]ssault, with respect to victim Craig Hoover' and one (1) count of [a]ggravated [a]ssault with a [d]eadly [w]eapon, with respect to victim Craig Hoover[.[5]]

2. Whether the trial court erred in allowing the Commonwealth to cross-examine the Appellant about prior bad acts via an alleged statement where he supposedly threatened to kill Leslie Bacinelli and her then boyfriend by sticking a 3-inch blade into her neck and kill[ing] her boyfriend; and then make reference, in front of the jury, to a 2006 State Police [r]eport and State

_____

[5] In his Rule 1925(b) statement, Appellant did not specify which elements he was challenging of any of the crimes for which he was convicted.

- 13 -

Trooper after the Appellant denied any knowledge of the incident[.]

3. Whether the trial court abused its discretion by imposing a sentence at the highest end of the aggravated range of the Pennsylvania Sentencing Guidelines, by failing to consider the relevant sentencing criteria of the Pennsylvania Sentencing Code within 42 Pa.C.S. § 9721(b), failing to consider mitigating circumstances, and by failing to state sufficient reasons on the record for the sentence imposed[.]

Appellant's Brief at 9-10.

In his first issue, with regard to Ms. Bacinelli, Appellant asserts that "the Commonwealth has failed to adequately establish sufficient evidence to prove the element of intent beyond a reasonable doubt." *Id.* at 22. Additionally, Appellant argues that "the Commonwealth has failed to present sufficient evidence to credibly establish that the Appellant utilized a deadly weapon to inflict any injury on a vital part of the victim's body." *Id.*

As to Mr. Hoover, Appellant asserts that the Commonwealth failed to present sufficient evidence of intent and "failed to establish sufficient evidence to prove beyond a reasonable doubt that the Appellant took any substantial step toward making an attempt to kill [Mr. Hoover]." *Id.* at 24-25. According to Appellant, "the evidence clearly shows that the Appellant only wanted to fight Mr. Hoover and did not have a specific intent to kill or any intent to kill for that matter." *Id.* at 26. Additionally, Appellant argues that "the Commonwealth has failed to present sufficient evidence to credibly establish that he Appellant utilized a deadly weapon to inflict any injury on a vital part of the victim's body." *Id.*

The following applies when we review the sufficiency of the evidence:

> A claim challenging the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. . . . When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Nevels*, ___ A.3d ___, ___, 2019 WL 256097, at *6 (Pa. Super. Jan. 18, 2019) (ellipses in original and citation omitted).  Further, "[i]n conducting our review, we consider all of the evidence actually admitted at trial and do not review a diminished record." *Id.* (internal quotation marks and citation omitted).

In Pennsylvania, a criminal attempt occurs when a person, "with intent to commit a specific crime, . . . does any act which constitutes a substantial step towards the commission of that crime."  18 Pa.C.S. § 901(a).  Criminal homicide is defined as follows:  "A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being."  18 Pa.C.S. § 2501(a).  Accordingly, "if a person takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act, he may be convicted of attempted murder."  *Nevels*, 2019 WL 256097, at *7 (citation omitted).  Additionally, "[t]he use of a deadly weapon on a vital part of the human body is sufficient to establish the specific intent to kill."  *Commonwealth v. Hilliard*, 172 A.3d 5, 12 (Pa. Super. 2017) (internal quotation marks and citation omitted).

As to aggravated assault, "[a] person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). Additionally, "[a] person is guilty of aggravated assault if he . . . attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]" 18 Pa.C.S. § 2702(a)(4). Where attempted homicide and aggravated assault charges are based upon the same set of facts, proof of attempted homicide is "legally sufficient as a matter of law to support [a]ggravated [a]ssault." *Hilliard*, 172 A.3d at 13 (addressing the Commonwealth's burden of proof at the preliminary hearing stage).

Initially, we note that Appellant's sufficiency of the evidence claims are waived for failure to properly preserve them in his Rule 1925(b) statement. *See Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008) (holding that to challenge the sufficiency of the evidence, the 1925(b) statement must specify which elements of any crime the Commonwealth allegedly failed to sufficiently establish); *see also Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (stating that "[s]uch specificity is of particular importance in cases where, as here, the [a]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt").

Even if Appellant had preserved his sufficiency challenges, his claims do not entitle him to relief. As the trial court noted, Appellant

- 16 -

was charged with two (2) [c]ounts of [c]riminal [a]ttempt – [h]omicide, one of which was based upon the allegation that [Appellant] cut the face of Leslie Bacinelli from lip to cheek with a knife and then attempt to cut Leslie's throat, but was unsuccessful due to the scarf she was wearing. This factual basis also served the basis for one of each of the charges of [a]ggravated [a]ssault and [a]ggravated [a]ssault with a [d]eadly [w]eapon. Here, the Commonwealth presented detailed and thorough testimony of Leslie Bacineli stating that [Appellant] followed the vehicle in which she was a passenger for a lengthy distance before violently ramming the vehicle multiple times, and ultimately cased a crash. Leslie further testified that [Appellant] grabbed her by her hair, held her face, and told her to "take [her] last fucking breath" before slicing her face from lip to cheek and subsequently attempting to cut her throat with a knife. . . . the totality of the testimony and evidence presented, viewed in light most favorable to the Commonwealth as verdict winner, is sufficient to establish the elements of attempted homicide.

* * *

Similarly, the [c]riminal [a]ttempt – [h]omicide, [a]ggravated [a]ssault, [and a]ggravated [a]ssault with a [d]eadly [w]eapon . . . charges as to Craig were based upon the allegation that after [Appellant] attempted to kill Leslie Bacinelli, he chased victim Craig Hoover with a knife expressly stating that his intention was to kill him. Again, the evidence, viewed in a light most favorable to the Commonwealth as verdict winner, is sufficient to establish each of the elements of the above-charges if believed by the jury. Leslie and Craig both extensively testified regarding the lengthy pursuit [Appellant] engaged in before ultimately violently ramming their vehicle multiple times, causing them to crash. Both Leslie and Craig testified that [Appellant] chased after Craig with a knew after attacking Leslie[.]

Trial Ct. Op. at 24-25, 28. Because the trial court's decision is supported by the record, we agree with the trial court that Appellant's sufficiency of the evidence claims are without merit in light of the overwhelming evidence of his guilt. *See Nevels*, ___ A.3d at ___, 2019 WL 256097 at *6.

In his second issue, Appellant challenges certain cross-examination by the Commonwealth as highly prejudicial. Appellant's Brief at 33. Specifically, Appellant objects to the question, as quoted above: "Do you remember a 2006 incident in March, St. Patrick's Day weekend, parade weekend in 2006, where you are calling her over and over and over again and leaving voicemails?" N.T. Trial, 11/17/16, at 264. Appellant also asserts that the Commonwealth improperly "continued to cross-examine . . . Appellant by making reference to a Pennsylvania State Trooper." Appellant's Brief at 33.

In Appellant's view,

> the trial court committed prejudicial error and erred as a matter of law in allowing the Commonwealth to utilize the 2006 Pennsylvania State Police Report [because] the trial court did not perform the proper analysis to determine whether the evidence was relevant, and if relevant[,] the trial court never considered or balanced the factors as to whether the probative value of the evidence [was] outweighed by the danger of unfair prejudice.

*Id.* Additionally, Appellant argues that the trial court "indicated that no cautionary instruction or limiting instruction was required because the [police] report was not actually admitted into evidence. . . ." Without a limiting or cautionary instruction, Appellant claims the jury was unaware that they could not consider the form and content of the Commonwealth's question[s regarding the report, including a question about a Pennsylvania State Trooper]." *Id.* at 35.

When we consider the admission of evidence at trial, we observe that it

> is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its

discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Tyson*, 119 A.3d 353, 357-58 (Pa. Super. 2015) (*en banc*) (citations and quotation marks omitted).

"Relevance is the threshold for admissibility of evidence." *Id.* at 358 (citation omitted). In general, "[a]ll relevant evidence is admissible . . . . Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by a danger of . . . unfair prejudice[.]" Pa.R.E. 403. When considering whether evidence may be unfairly prejudicial, "a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence." *Tyson*, 119 A.3d at 360. However, a trial court may decline to give a cautionary instruction where it would call unnecessary attention to a comment made by a prosecutor. *Commonwealth v. Bracey*, 831 A.2d 678, 683 (Pa. Super. 2003).

Initially, we note that Appellant's counsel did not object to the Commonwealth's questioning of Appellant as to whether he remembered repeatedly threatening Ms. Bacinelli and her then-boyfriend in 2006. Further, Appellant's counsel objected to the question referring to the Pennsylvania State Trooper as "asked and answered," which was sustained by the trial court. *See* N.T. Trial, 11/17/16, at 264-65. Soon after, Appellant's counsel requested a mistrial, arguing that the State Police had not contacted Appellant about an incident in 2006. *See id.* at 265. The trial court denied the request

for a mistrial. *See id.* Accordingly, Appellant has failed to preserve his appellate issue that the question unfairly broadcasts the 2006 police report to the jury, allowing them to hear evidence that was more prejudicial than its probative value. *See* Appellant's Brief at 35; Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Appellant also argues that it was error for the trial court not to issue a cautionary instruction after the Commonwealth mentioned a Pennsylvania State Trooper in a question to Appellant on cross-examination. However, Appellant's counsel did not request a cautionary instruction during trial. Additionally, the trial court chose not to issue a cautionary instruction because "this would [have] cause[d] juror confusion and unnecessarily highlight[ed] the 2006 police report." Trial Ct. Op., 5/11/18, at 39. Accordingly, this issue is waived, and even if it were preserved, we discern no error on the part of the trial court in not issuing a cautionary instruction. *See Bracey*, 831 A.2d at 683.

In his final issue, Appellant challenges discretionary aspects of his sentencing. Appellant asserts that

> [n]ot only did the trial court impose the highest aggravated range sentence for [the two counts of attempted homicide], but [the court] also chose to run both of those sentences consecutively despite Appellant's lack of any criminal history. . . . [I]t appears as though the trial court failed to consider any mitigating circumstances on the record before imposing aggravated sentences in the top end of the range and also running both counts consecutive to each other. In running the sentences

- 20 -

consecutively, the failure to adequately consider mitigating circumstances was compounded.

Appellant's Brief at 39-40. According to Appellant, his lack of a criminal record and his rehabilitative needs were mitigating circumstances that should have resulted in a shorter sentence. *Id.* at 42.

We note that an appeal challenging the discretionary aspects of sentencing is not an appeal as of right. *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011).

> To determine whether an appellant has properly preserved the discretionary aspects of sentencing for appellate review, we must conduct the following four part analysis: (1) whether appellant has filed a timely notice of appeal;(2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence;(3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id*. (footnotes and citation omitted).

Here, Appellant filed a timely notice of appeal, preserved his sentencing challenges in a post-sentence motion, and included a Pa.R.A.P. 2119(f) statement in his brief. Accordingly, we turn to whether a substantial question exists in this matter.

We note that, "[g]enerally speaking, the court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is not viewed as raising a substantial question that would allow the granting of allowance of appeal." *Commonwealth v. Mastromarino*, 2 A.3d 581, 586 (Pa. Super. 2010) (citation omitted). However, "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating

factors—raises a substantial question." ***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (citation omitted). Accordingly, Appellant presents a substantial question in this appeal.

Where a sentence is imposed within the guidelines, we may only reverse the trial court if we find that the circumstances of the case rendered the application of the guidelines "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). Our review of the reasonableness is based upon the factors contained in 42 Pa.C.S. § 9781(d),[6] and the trial court's consideration of the general sentencing standards contained in 42 Pa.C.S. § 9721(b).[7] We note that a trial court has discretion whether to sentence a defendant to consecutive or concurrent sentences for multiple offenses. ***See Commonwealth v. Hill***, 66

---

[6] Section 9781(d) includes the following:

> **(d) Review of record.—**In reviewing the record the appellate court shall have regard for:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

> (3) The findings upon which the sentence was based.

> (4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

[7] Section 9721(b) provides that the court must follow the general principal that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

A.3d 365, 370 (Pa. Super. 2013) ("[I]n imposing sentence, the trial judge may determine whether, given the facts of a particular case, a sentence should run consecutive to or concurrent with another sentence being imposed.").

In fashioning a sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. *See* 42 Pa.C.S. § 9721(b); *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009). "[W]here the sentencing judge had the benefit of a pre-sentence investigation report [(PSI)], it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Ventura*, 975 A.2d at 1135 (citation omitted).

In this matter, while Appellant's sentences were structured to be served consecutively, each sentence fell within the guideline range. The trial court was well aware of the nature and circumstances of the crimes involved, particularly since it had considered the PSI. *See id.* At sentencing, the trial court stated that it:

> reviewed [Appellant's] presentence report, looked over what [it] considered to be mitigating and aggravating factors.
>
> The district attorney has asked [the court to] go outside the guideline [range]. And the [c]ourt is not going to go outside but is going to sentence in the aggravated range. In regard to the attempted murder counts based on not only what [Appellant] has stated but the facts and circumstances surrounding this case including the time of planning it, the length of time over which it occurred, the miles driven and the multiple victims that this wasn't something that just happened quickly.

> And it really will be with the victims and your children for a very, very long time because of your actions that night.

N.T. Sentencing, 3/7/17, at 33-34.

Accordingly, a review of the record reveals no basis to conclude that the trial court failed to consider or inappropriately weighed the lack of a criminal record or Appellant's rehabilitative needs in light of the gravity of the offense and the impact on victims. On this basis, we cannot conclude that the consecutive aggravated range sentences imposed were "clearly unreasonable." *See* 42 Pa.C.S. § 9781(c). Therefore, Appellant's discretionary aspects of sentencing claim entitles him to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/25/2019