**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Avery Everette BRACEY, Appellant.**

Superior Court of Pennsylvania.

Submitted April 14, 2003.
Filed Aug. 22, 2003.

---

MaryJean Glick, Public Defender, Lancaster, for appellant.

John H. May, Asst. Dist. Atty., Lancaster and Donald R. Totaro, Asst. Dist. Atty., Lancaster, for Com., appellee.

BEFORE: JOYCE, KLEIN, JJ., and McEWEN, P.J.E.

OPINION BY McEWEN, P.J.E.:

¶1 Appellant, Avery Everette Bracey, brings this appeal from the judgment of sentence to serve a total term of imprisonment of from six years to fourteen years, imposed after the jury found him guilty of robbery, aggravated assault, and theft by unlawful taking.[1] We affirm in part and vacate in part.

¶2 The prosecution of appellant arose from crimes committed in Lancaster County on December 19, 2001, when an assailant beat and robbed 60 year-old Billy Mitchell of eight dollars ($8.00) while he was a guest in the apartment of a friend, and then took Mr. Mitchell's truck. Mitchell reported the assault and theft to the police at approximately 10:00 p.m. of the same evening, and in less than one-half hour, appellant was apprehended behind the wheel of Mr. Mitchell's truck. When appellant was brought to the police station, the police noticed blood stains on his clothes and hands. Pieces of appellant's blood stained clothes were seized for lab testing, and samples of blood were recovered from his hands. The blood tests determined that the blood was of human origin with a high probability that some of it came from Mr. Mitchell. A jury, on July 9, 2002, found appellant guilty of the above referenced crimes. The trial judge imposed sentence on September 13, 2002, and appellant thereafter filed this timely appeal.

¶3 Appellant, in the brief submitted in support of this appeal, presents the following questions for our review:

Did the trial court err in prohibiting defense counsel from introducing evidence of the victim's prior conviction for aggravated assault, where defense coun-

---

1. Separate sentences were imposed in the convictions for robbery and aggravated assault, while no sentence was imposed for the conviction of theft, as it was deemed merged into the conviction for robbery.

sel's theory of the case was that the victim had been in a fight with someone prior to encountering the defendant, and the Commonwealth opened the door to the victim's prior record by claiming that the victim was "at his essence . . . a decent person"?

Did the trial court err in denying defendant's motion for a mistrial where the Assistant District Attorney, in his closing argument, improperly raised the fact that defendant chose to remain silent at the time of his arrest, and the court gave no corrective instruction?

Did the trial court err in repeatedly instructing the jury incorrectly regarding the elements and required culpability necessary to convict defendant of aggravated assault, where the Commonwealth conceded that the victim had not sustained serious bodily injury, and was seeking a conviction solely on the basis that defendant had allegedly attempted to cause serious bodily injury?

■ ¶ 4 Appellant first argues that the trial court erred in refusing to permit defense counsel to use on cross examination the victim's 1996 conviction for aggravated assault. He contends that:

> [H]e should have been permitted to introduce evidence to show that Billy Mitchell had been convicted in 1996 of aggravated assault. Defendant's theory of the case was that Mr. Mitchell had already been assaulted during an altercation with someone else when he encountered him. Thus, Mr. Mitchell's violent nature was relevant because it tended to add credence to defendant's version of events.

Brief of Appellant, p. 18. Our consideration of these contentions must include two salient factors: (1) the trial judge originally addressed this question during a pretrial ruling on defense counsel's motion *in*

*limine,* and (2) appellant did ***not*** assert a justification defense.

■ ¶ 5 In reviewing a trial court ruling on the admissibility of evidence our standard of review is one of deference. It is firmly established that "[q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Chmiel,* 558 Pa. 478, 493, 738 A.2d 406, 414 (1999), *cert. denied,* 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000).

¶ 6 It merits mention that appellant does not urge that the judge's pretrial ruling constituted an error of law. Rather, he contends that a comment made by the Assistant District Attorney during his opening address to the jury constituted an impermissible reference to the victim's character, thereby "opening the door" to an attack on the victim's character, and that, therefore, it was an abuse of discretion for the trial judge to refuse to permit the use of the victim's prior conviction. The alleged offending comment of the prosecutor was contained within the following introductory remarks:

> [This case is] also about the victim, Billy Mitchell who, as I said, is 60 years old. Mr. Mitchell is not like a lot of us. He's had a hard life. He's nervous about testifying today. He's not the most social character but at his essence, ***he's a decent person*** and he didn't deserve what happened to him.

N.T. July 8, 2002, p. 41 (emphasis supplied).

¶ 7 This comment, when read in the context of the trial, was not a depiction of the victim's character, but was an effort to negate the anticipated attempt of the defense to portray Mr. Mitchell as hapless

and unworthy because he was a sixty year old homeless man who, during cold spells, traded beer and cigarettes to friends in return for a place to sleep. In fact, though drug use was denied by Mr. Mitchell, defense counsel, in an obvious attempt to discredit Mr. Mitchell, referred to him as a "crack head" at times during the trial. The Commonwealth's comment was no more than a reminder to the jury that Mr. Mitchell, though living on the margin of society, was nonetheless deserving of the protection of the law. The trial judge appreciated this fact,[2] and ruled that there was no attempt by the Commonwealth to invoke the victim's character in behalf of his credibility. We find no basis upon which to disagree with this decision.

¶ 8 Moreover, since the trial judge correctly applied Pa.R.E. 609,[3] and since appellant was not asserting a self-defense claim, we detect no basis upon which to find that the trial judge erred or abused his discretion in refusing to allow defense counsel to cross examine the victim about his prior conviction for aggravated assault.

■■■ ¶ 9 Appellant next argues that the Commonwealth impermissibly referred to his pre-arrest silence, and that the trial court erred in refusing to grant his request for a mistrial. The standard governing our review of a trial court's refusal to grant a request for a mistrial has been previously well summarized by this Court:

The decision to declare a mistrial is within the sound discretion of the court and will not be reversed absent a "flagrant abuse of discretion." *Commonwealth v. Cottam*, 420 Pa.Super. 311, 616 A.2d 988, 997 (1992); *Commonwealth v. Gonzales*, 415 Pa.Super. 564, 570, 609 A.2d 1368, 1370–71 (1992). A mistrial is an "extreme remedy . . . [that] . . . must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." *Commonwealth v. Vazquez*, 421 Pa.Super. 184, 617 A.2d 786, 787–88 (1992) (*citing Commonwealth v. Chestnut*, 511 Pa. 169, 512 A.2d 603 (1986), and *Commonwealth v. Brinkley*, 505 Pa. 442, 480 A.2d 980 (1984)). A trial court may remove taint caused by improper testimony through curative instructions. *Commonwealth v. Savage*, 529 Pa. 108, 602 A.2d 309, 312–13; *Commonwealth v. Richardson*, 496 Pa. 521, 437 A.2d 1162 (1981). Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required. *Richardson*, 496 Pa. at 526–527, 437 A.2d at 1165. The circumstances which the court must consider include whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed, whether the Commonwealth exploited the refer-

**2.** During the trial the judge denied defense counsel's request to reconsider his pre-trial ruling, stating:
   I don't think what he said in his opening statement nor any of the victim's testimony reaches the level where it would be appropriate. So the ruling is as before.
   N.T. July 8, 2002, p. 133.

**3.** In support of his decision on this issue the trial judge offered the following rationale in the Opinion he filed with this Court:

For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is only admissible if it was a crime involving dishonesty or false statement. Pa.R.E. 609. Mr. Mitchell's assault [was] not a conviction involving dishonesty or false statements, and it is, therefore, irrelevant to the issue of his veracity. *See Commonwealth v. Grimm*, 249 Pa.Super. 441, 378 A.2d 377 (1977).

ence, and whether the curative instruction was appropriate. *Id.*

*Commonwealth v. Stilley,* 455 Pa.Super. 543, 689 A.2d 242, 250 (1997).

¶ 10 The argument of appellant is founded upon the following remark made by the prosecutor during his closing argument:

He's pulled over. ***Doesn't say anything. That's his right.*** And then on the ride back to the police station he says, I rented it from some guy off the street. That's all he says.

N.T. July 9, 2002, p. 255 (emphasis supplied). This is the sole comment made by the Commonwealth with regard to appellant's "silence". In rejecting the claim that this isolated reference entitled appellant to a new trial the trial judge wrote:

Immediately after referencing his silence, the Assistant District Attorney stated that it was the defendant's right not to say anything. When the motion for a mistrial was made, I decided that the comment that the defendant had a right to remain silent adequately corrected the reference to his silence and that a cautionary instruction would have called unnecessary attention to the reference. Furthermore, there was testimony that the defendant gave varying statements to the police in both the truck and the police station. Therefore, the degree of prejudice caused by reference to the silence was lessened by the fact that the jury heard testimony that he gave statements to the police. *Commonwealth v. Gbur,* 327 Pa.Super. 18, 25, 474 A.2d 1151, 1154 (1984). I concluded that the Commonwealth's remark was *de minimis* and that a curative instruction was not necessary.

Our review of the record supports this perceptive analysis of the trial judge.

¶ 11 Moreover, we are compelled to the conclusion that the Commonwealth's isolated remark could have also been sustained under a "fair response" analysis, since defense counsel, during a closing argument which preceded the Commonwealth's closing argument, repeatedly made reference to appellant's "story" and attempted to convince the jury of its inherent credibility, specifically:

-"Avery's version of the events on December 19th never changed. He told Officer Goodson, he told Detective Kiss, he told Detective Burkhart, I rented the car on the street from someone, and that fits with the physical evidence." N.T. July 9, 2002, p. 241.

-"The bottom line is Avery never denied that that was Billy Mitchell's blood on him. He offered that. Hey, I wiped this guy's blood off and then I rented the truck from him." N.T. July 9, 2002, p. 242.

-"If Avery's version is false, why don't they do absolutely everything to prove it false?" N.T. July 9, 2002, p. 245.

These references were made by defense counsel, despite the fact that appellant had not testified at trial, and had not been subjected to cross examination. Thus, the Commonwealth's passing reference to the progression of appellant's "story" (from saying nothing to telling the police his possession of the victim's truck was a street-level business deal) was merely fair comment. *See e.g.: Commonwealth v. Bolus,* 545 Pa. 103, 680 A.2d 839 (1996). *Cf: Commonwealth v. DiNicola,* 797 A.2d 966 (Pa.Super.2002), *appeal granted,* 572 Pa. 763, 819 A.2d 546 (2003) (Where defendant had not testified, Commonwealth could not introduce evidence in its case-in-chief regarding defendant's pre-arrest silence.).

¶ 12 Appellant contends in his final argument that the trial judge erred in his instructions to the jury on the charge of aggravated assault.

In reviewing a challenged jury instruction, we must review the charge as a whole and not simply isolated portions, to ascertain whether it fairly conveys the required legal principles at issue. *Commonwealth v. Faulkner,* 528 Pa. 57, 595 A.2d 28 (1991), *cert. denied,* 503 U.S. 989, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992). We are reminded, as well, that a trial court possesses broad discretion in phrasing its instructions to the jury and is not limited to using particular language provided that the law is clearly, adequately and accurately presented to the jury. *Commonwealth v. Prosdocimo,* 525 Pa. 147, 578 A.2d 1273 (1990). *Commonwealth v. Jones,* 546 Pa. 161, 192–193, 683 A.2d 1181, 1196 (1996).

¶ 13 Appellant argues that the trial judge's instructions on aggravated assault were inappropriate in that the court instructed the jury on charges and elements that were not part of the Commonwealth's case against the appellant. This argument is founded upon the fact that the Commonwealth's theory of culpability on the count of aggravated assault was based on an alleged attempt to cause serious bodily injury, rather than the actual causation of bodily injury, as revealed in the following remarks made by the prosecutor during his closing argument:

> He's also charged with aggravated assault and he's not charged—Miss Wellener [defense counsel] pointed out that there's no serious bodily injury in this case. ***We're not alleging that there is.***

> ***We're alleging that the defendant, in his conduct that night, attempted to cause serious bodily injury.***

N.T. July 9, 2002, p. 251 (emphasis supplied). Defense counsel, based on this statement, asked the trial judge to tailor his jury charge to focus solely on that part of the aggravated assault charge that described an "attempt to cause serious bodily injury".[4] The trial judge refused, opting instead to read to the jury the entire criminal information, the complete statutory language, and certain "explanatory comments" which were apparently derived from the Pennsylvania Suggested Standard Jury Instructions, Pa. SSJI (Crim).[5] *See:* Trial Court Slip Opinion p. 3. In relevant part those instructions were as follows:

> Now I'm going to move to the second charge which has been brought by the Commonwealth, and I'm going to read to you the Information for that charge and that's aggravated assault.

> The Information alleges that the defendant did attempt to cause serious bodily injury to another or did cause such injury intentionally, knowingly or recklessly under circumstances which manifested an extreme indifference to the value of human life: To wit, he did repeatedly strike Billy Mitchell with closed fists and did also kick him numerous times about the face and body causing facial lacerations and severe facial swelling. Said offense occurred in the 100 block of

---

4. In appellant's brief the argument is phrased as follows:
   As the Commonwealth conceded that the victim had not suffered serious bodily injury, the only relevant portion of the jury instructions for aggravated assault was that which explained those elements necessary to convict defendant for attempting to cause serious bodily injury, in particular, the required element of specific intent.
   Brief of Appellant, pp. 26–27.

5. The Pennsylvania Suggested Standard Jury Instructions for Criminal Trials were prepared by the Criminal Instructions Subcommittee of the Pennsylvania Supreme Court Committee for Proposed Jury Instructions, and were published by the Pennsylvania Bar Institute, which is the Continuing Legal Education Arm of the Pennsylvania Bar Association.

South Queen Street, Lancaster City, Lancaster County.

Now, this is the language—statutory language of aggravated assault. A person is guilty of aggravated assault if he attempts to cause serious bodily injury to another or if he causes such injury intentionally, knowingly or recklessly under circumstances manifesting an extreme indifference to the value of human life.

Serious bodily injury is bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

Now, these explanatory comments about the charge of aggravated assault [sic]. In order to find the defendant guilty of aggravated assault, you must find that each of the elements of the crime has been established beyond a reasonable doubt and there are three elements.

Number 1, that the defendant attempted to cause or did cause serious bodily injury to Billy Mitchell. In order to find that the defendant attempted to do this, you must find that he engaged in conduct which constituted a substantial step toward causing serious bodily injury to Billy Mitchell.

Element Number 2, that the defendant acted intentionally, knowingly or recklessly under circumstances which manifests an extreme indifference to the value of human life.

A person acts intentionally with respect to serious bodily injury when it is his conscious object or purpose to cause such an injury.

A person acts knowingly with respect to serious bodily injury when he is aware

that it is practically certain that his conduct will cause such a result.

A person acts recklessly with respect to serious bodily injury when he consciously disregards a substantial and unjustifiable risk that serious bodily injury will result from his conduct.

The risk must be of such a nature and degree that considering the nature and intent of the defendant's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct which a reasonable person would observe in the defendant's situation.

Serious bodily injury means impairment of physical condition which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

If after considering all of the evidence you find that the Commonwealth has established each of these three[6] elements beyond a reasonable doubt, then you should find the defendant guilty of aggravated assault. Otherwise, you must find him not guilty of that charge.

In cases involving attempt to commit serious bodily injury, the Commonwealth must prove specific intent. Specific intent to inflict serious bodily injury such as that required to prove aggravated assault which is based upon an attempt may be proved circumstantially.

To prove that the defendant attempted to cause serious bodily injury, the Commonwealth need only show that the defendant attempted to cause serious bodily injury to another, not that serious bodily injury actually occurred.

Conduct giving rise to the inference that the defendant intended to cause serious

---

6. It bears emphasis that, as is evident from the above recitation of the jury instructions, the judge did not separately identify the third element.

bodily injury sufficient to support an aggravated assault conviction need not in itself be life-threatening.

If there is no direct evidence of intent, the defendant's intent to inflict serious bodily injury may be gleaned from other circumstances surrounding the defendant's attack on the victim. Such evidence can include that the defendant was disproportionately larger or stronger than the victim.

N.T. July 9, 2002, pp. 277–281.

¶ 14 Appellant contends that this lengthy instruction, which contained so much superfluous information, only served to confuse the jury, an assertion made evident by the fact that the jury, following the commencement of deliberations, twice returned to the courtroom seeking additional instructions on the crime of aggravated assault, and its relationship to the lesser offense of simple assault. In each instance, defense counsel sought the more limited instruction that focused only on the first part of the statutory definition of aggravated assault, and each time the trial judge refused. In response to the jurors' first inquiry the judge re-read them the entire statutory definition of aggravated assault, the "explanatory comments" related to aggravated assault, the statutory language for simple assault, and the "explanatory comments" related to simple assault. N.T. July 9, 2002, pp. 293–297. In response to the jurors' second inquiry the judge re-read to them the entire statutory definition of aggravated assault, and the "explanatory comments" related to aggravated assault. N.T. July 9, 2002, pp. 299–302. It was only then, following the third instruction on aggravated assault, that the jury returned a verdict of guilty on aggravated assault—in addition to verdicts of guilt on robbery and theft.

¶ 15 The trial judge, in his Opinion to this Court, has offered the following rationale in support of his instruction upon this count:

> The Commonwealth charged the Defendant with aggravated assault, 18 Pa.C.S. § 2702(a)(1), which states: "attempts to cause serious bodily injury … or causes such injury …." The Information, which tracks this statutory language and the exact statutory language were read to the jury. Explanatory comments on that statutory language were given to the jury. See Pa. SSJI (Crim) 15.2702A and B. Finally, specific instructions on the Commonwealth's burden to prove specific intent as to the "attempt to commit serious bodily injury" provisions of the statute were given to the jury as well.
>
> The Defendant contends that, because the Commonwealth was only seeking a conviction for an attempt to cause serious bodily injury, these instructions were error. The language in the Information, the statute and the explanatory comments was presented to the jury in the disjunctive, i.e. "attempts to cause … **or** causes". Accordingly, I believe this contention is without merit.

Trial Court Slip Opinion pp. 2–3.

¶ 16 Our particular focus is upon section 2702 of the Crimes Code, which provides in relevant part:

> A person is guilty of aggravated assault if he attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

18 Pa.C.S. § 2702(a)(1). Appellant contends—and correctly so—that the first clause stands alone, and that only the second clause is modified by the *mens rea* elements of "intentionally, knowingly or recklessly."

¶ 17 Our late distinguished colleague Judge Sydney J. Hoffman, in his Opinion in *Commonwealth v. Grassmyer,* 266 Pa.Super. 11, 402 A.2d 1052 (1979), accurately explained the distinction between the separate offenses described in subsection (a)(1) of section 2702, when he wrote:

> Under Section 2702(a)(1), one is guilty of aggravated assault if he either attempts to cause serious bodily harm, or if he causes such injury in fact intentionally, knowingly, or *recklessly.* The attempt to cause serious bodily injury, is, like all criminal attempts, a specific intent crime. 18 Pa.C.S. § 903(a); *Mt. Lebanon Motors, Inc. v. Chrysler Corp.,* 283 F.Supp. 453, 462 (W.D.Pa.1968). *See generally Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975). However, because a successful infliction of serious bodily injury, as in the instant case, is criminal if recklessly inflicted, specific intent is not required. *See* 18 Pa.C.S. § 302(b)(3) (defining recklessness not as intent to achieve particular result but as conscious disregard of substantial and unjustifiable risk).

*Grassmyer, supra,* at 1054, n. 1 (emphasis in original).[7]

¶ 18 Nor may it be overlooked that the Pennsylvania Suggested Standard Jury Instructions for Criminal Trials,[8] suggest that separate jury instructions should be given on each of the clauses, specifically:

AGGRAVATED ASSAULT—ATTEMPTED SERIOUS BODILY INJURY

The defendant has been charged with the crime of aggravated assault. In order to find the defendant guilty of aggravated assault you must find that each of the elements of the crime has been established beyond a reasonable doubt. There are two elements:

1. That the defendant attempted to cause serious bodily injury to [the victim]. In order to find that the defendant attempted to do this, you must find that he engaged in conduct which constituted a substantial step toward causing serious bodily injury to [the victim].

2. That the defendant's conduct in this regard was intentional, or in other words that it was his conscious object or purpose to cause such serious bodily injury.

If, after considering all of the evidence, you find that the Commonwealth has established each of these elements beyond a reasonable doubt, then you should find the defendant guilty of aggravated assault. Other wise you must find the defendant not guilty of aggravated assault.

Pa. SSJI (Crim) 15.2702A, (relating to the first part of Section 2702(a)(1)).

AGGRAVATED ASSAULT—CAUSING SERIOUS BODILY INJURY

The defendant has been charged with the crime of aggravated assault. In order to find the defendant guilty of ag-

---

**7.** The strict *mens rea* for the attempt provision and the expansive *mens rea* for the actual serious bodily injury provision is also evident from a grammatical analysis of the section. The first clause is an independent clause set off by a comma (i.e., "[a] person is guilty of aggravated assault if he attempts to cause serious bodily injury to another,"), while there is no comma after the phrase "or causes such injury" which introduces the second clause. Thus, the *mens rea* elements of "in-

tentionally, knowingly, or recklessly" are clearly intended as part of the second clause, and are not intended to relate back to the first clause.

**8.** While we recognize that these "instructions" are not binding on trial courts, they are nonetheless instructive. *Commonwealth v. Tilley,* 528 Pa. 125, 142, 595 A.2d 575, 583 (1991).

gravated assault you must find that each of the elements of the crime has been established beyond a reasonable doubt. There are three elements:

1. That the defendant caused serious bodily injury to [the victim].

2. That the defendant acted intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. A person acts intentionally with respect to serious bodily injury when it is his conscious object or purpose to cause such injury. A person acts knowingly with respect to serious bodily injury when he is aware that it is practically certain that his conduct will cause such a result. A person acts recklessly with respect to serious bodily injury when he consciously disregards a substantial and unjustifiable risk that serious bodily injury will result from his conduct. The risk must be of such a nature and degree that considering the nature and intent of the defendant's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct which a reasonable person would observe in the defendant's situation.

If, after considering all of the evidence, you find that the Commonwealth has established each of these elements beyond a reasonable doubt, then you should find the defendant guilty of aggravated assault. Otherwise you must find the defendant not guilty of aggravated assault.

Pa. SSJI (Crim) 15.2702B, (relating to the second part of section 2702(a)(1)).

¶ 19 It bears emphasis that the trial court in its Opinion in support of its ruling specifically referred to the Pennsylvania Suggested Standard Jury Instructions as the source of its "explanatory comments" to the jury. ("Explanatory comments on that statutory language were given to the jury. *See:* Pa. SSJI (Crim) 15.2702A and B."). It appears, however, that in reading these "comments" to the jury, the trial judge merged part of each of the above separate and distinct suggested instructions into a single one, thereby delivering a hybrid instruction that utilized the first of element of suggested instruction 15.2702A, with the second element of suggested instruction 15.2702B. Moreover, this hybrid instruction, which blurred the distinction between the statutory subsections, was thereafter twice repeated in the ensuing two instructions to the jury. *See:* N.T. July 9, 2002, pp. 278–281, 294–296, 300–302.

¶ 20 The fact that this hybrid instruction was delivered to the jury three times eased the way for the jury to find appellant guilty of aggravated assault by attempt based upon a *mens rea* element that was less than specific intent. As a result, we are compelled to rule that appellant be afforded a new trial on the charge of aggravated assault. Consequently, we are required to vacate the conviction for aggravated assault and remand this case to the trial court for further proceeding.[9]

---

9. The parties will, of course, upon remand be mindful of certain of the decisions of this Court that have held that the doctrine of merger will preclude the imposition of a separate sentence on an aggravated assault conviction when it is founded upon the same operative facts as a robbery conviction. *See: Commonwealth v. Ennis*, 394 Pa.Super. 1, 574 A.2d 1116 (1990), and *Commonwealth v. Moore*, 421 Pa.Super. 241, 617 A.2d 816 (1992), *appeal denied*, 536 Pa. 621, 637 A.2d 281 (1993). *Compare: Commonwealth v. Belsar*, 544 Pa. 346, 676 A.2d 632 (1996) (No merger of aggravated assault with robbery when aggravated assault conviction is based on completed, as opposed to attempted, act);

¶ 21 Judgment of sentence on robbery affirmed. Judgment of sentence on aggravated assault is vacated. Case remanded. Jurisdiction relinquished.

¶ 22 KLEIN, J., Files a concurring Statement.

## CONCURRING STATEMENT BY KLEIN, J.:

¶ 1 I fully join in all that is said by my esteemed colleague, President Judge Emeritus McEwen. I agree that the way the charge was read, there was a likelihood of jury confusion. It is possible that the jury thought that even without serious bodily injury resulting, aggravated assault could be caused recklessly, which is not the law.

¶ 2 I wish to add that a trial judge does not necessarily discharge his or her obligation merely by reading the draft standard charge verbatim. Numerous studies show that jurors fail to comprehend a large portion of the instructions on the law under the best of circumstances. In a lengthy article in the Yale Law and Policy Review, Connecticut Assistant Attorney General Drury Stevenson stated, "[I]t makes little sense to have a jury at all if the jury cannot receive its directives in terms the jurors comprehend." *To Whom is the Law Addressed? 21 Yale L. & Pol'y. Rev. 105* (Winter 2003).

¶ 3 There is a general reluctance to deviate from the legalese of the statutory definitions of crimes, which I believe is ill advised. The eminent trial advocacy and legal writing professor James W. McElhaney, Joseph C. Hostetler Professor of Trial Practice and Advocacy at Case Western Reserve School of Law wrote a much shorter but pithy article on Plain English and jury instructions in the American Bar Association Journal. He asked, "But if jury instructions are intended for regular people and not lawyers, why give them in Legal instead of English?" *When Jurors' Eyes Glaze Over, They're Telling you Something, 81 A.B.A. J. 91* (Nov.1995). He quoted Professor Stephen A. Saltzburg of George Washington University National Law Center for the answer. Professor Saltzburg attributed the answer to the fear of reversal, saying, "That's why judges are loath to use anything except the traditional language. They use the words of the statute rather than try to explain what the law really means."

¶ 4 Until the draft standard instructions are translated into Plain English from legalese, trial judges should make sure the standard explanations can be understood. They certainly should avoid the confusion that will result if extraneous and irrelevant portions of the standard charge are merely read to the jury without a simplified explanation.

---

and *Commonwealth v. Rodriquez,* 449 Pa.Super. 319, 673 A.2d 962 (1996), *appeal denied,* 547 Pa. 754, 692 A.2d 565 (1997) (distinguishing the facts there from the facts in *Commonwealth v. Ennis* ).