J-S01040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SCOTT EDWARD DUYGO | : | |
| | : | |
| Appellant | : | No. 318 WDA 2022 |

Appeal from the Judgment of Sentence Entered March 4, 2022
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000818-2020

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: MAY 31, 2023**

Scott Edward Duygo appeals from the judgment of sentence imposed following a jury trial in which he was found guilty of rape by forcible compulsion, aggravated indecent assault without the complainant's consent, aggravated assault by forcible compulsion, indecent assault without the complainant's consent, and indecent assault by forcible compulsion.[1] For these offenses, Duygo was sentenced to nine and one-half to twenty years of incarceration, to be followed by three years of probation. On appeal, Duygo contends that the lower court abused its discretion by requiring his counsel, then ill with COVID-19, to present closing argument on his behalf via the video

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S. § 3121(a)(1); 18 Pa.C.S. § 3125(a)(1); 18 Pa.C.S. § 3125(a)(2); 18 Pa.C.S. § 3126(a)(1); and 18 Pa.C.S. § 3126(a)(2), respectively.

application Zoom and, further, that the Commonwealth presented insufficient evidence to prove beyond a reasonable doubt that he engaged in 'forcible compulsion'. We affirm.

As capably summarized by the lower court:

On January 19, 2019, Mercedes Price, then twenty-five years of age, and her childhood friend, Brandon Donnelly, went out for dinner and drinks in Uniontown, Pennsylvania to celebrate Mr. Donnelly's birthday. At the time, Ms. Price was staying with her father in Adah, Pennsylvania, and Mr. Donnelly picked her up there and drove them both to a Mexican restaurant in Uniontown. Ms. Price had a margarita with dinner and, as the two planned to go for drinks afterward, she asked her father and his girlfriend for a recommendation on a place to go in the area. On the recommendation of her father's girlfriend, the two went to Sunset Bar in Uniontown where Ms. Price had beer and shots of Tequila Rose. After that, Mr. Donnelly drove them both to the Blue Moon [Cafe] where she had more beer and shots.

According to Ms. Price, she and Mr. Donnelly had an argument, and he left her at the bar. Ms. Price then left the bar and tried to use the GPS on her mobile phone to determine the way back to her father's house. The intoxicated Ms. Price was having difficulty seeing her phone when she saw [Duygo] walking down the sidewalk. She asked him for help in figuring out how to get back to her father's house, showing him her phone and the GPS information. [Duygo] responded that he could help, and he knew where to go because he was familiar with the area.

Ms. Price followed [Duygo] off the main road and behind nearby buildings. Ms. Price asked him where they were going, and [Duygo] pushed her up against one of the buildings and attempted to kiss her. Ms. Price pulled away, and [Duygo] physically turned her around to face the building. He worked to undo her jeans, and then pulled them down and inserted his penis into her vagina. Ms. Price tried more than once to escape, attempting to push away from the building or to bend down and crawl away, her efforts causing [Duygo's] penis to slip out of her after which he reinserted it. Eventually, she was successful and ended up on the ground. She did not see [Duygo] anymore, and she pulled up her pants.

She looked around for her purse and her mobile phone but could not find either.

Ms. Price then made her way to a main road, where Pennsylvania State Trooper Matthew Rucinski and his partner, Trooper Duvall were approaching. The troopers saw Ms. Price waving her arms on the side of the road to signal them before approaching the front of the vehicle and putting up her hands to stop them. They encountered Ms. Price around 1:55 a.m. on January 20, 2019. Ms. Price told them what had happened, and Trooper Duvall searched the area but found no one. Ms. Price was taken to Uniontown Hospital where a rape kit was performed. Two DNA profiles recovered from the samples belonged to [Duygo] and Ms. Price.

Trial Court Opinion, 9/8/22, at 2-4.

At trial, Duygo was represented by Fayette County Public Defender Matthew Jaynes, Esq.

Attorney Jaynes was present in the courtroom on January 3, 2022 during which all evidence was presented, with closing arguments to be held the following day. However, the next morning, January 4, 2022, Attorney Jaynes informed [the lower court] that he was experiencing symptoms of COVID[-19] and had tested positive for the virus. Accordingly, Attorney Nicholas Clark[, also a Fayette County Public Defender,] appeared in the courtroom in person with [Duygo], and arrangements were made for Attorney Jaynes to make his closing argument to the jury remotely via the Zoom application. Attorney Jaynes moved for a mistrial on the ground that his inability to make his argument in person prejudiced [Duygo]. [The lower court] denied the motion since the health risk to others was too great for Attorney Jaynes to appear in person and sufficient accommodation had been made to enable him to make his closing argument to the jury remotely.

*Id*., at 1-2.

After his conviction and sentencing, Duygo filed a timely notice of appeal. However, despite being ordered to do so, Duygo failed to timely file a concise statement of matters complained of on appeal pursuant to

Pennsylvania Rule of Appellate Procedure 1925. Ultimately, the concise statement was filed approximately twenty-one days late, which led the lower court to issue a statement in lieu of an opinion concluding that all of Duygo's issued had been waived.

In addition to the Rule 1925 violation, this Court dismissed Duygo's appeal on July 21, 2022, because counsel failed to file an appellate brief on Duygo's behalf. However, after petitioning this Court for reinstatement, the dismissal order was vacated and Duygo's counsel was permitted to file a brief within thirty days. *See* Order, filed 8/9/22. Duygo's counsel complied with this directive, and the lower court thereafter issued an opinion addressing the two issues contained in his tardy concise statement.

On appeal, Duygo asks:

1. Did the trial court abuse its discretion by requiring defense counsel to provide [Duygo's] closing argument by [way of] the Zoom app[lication] instead of in-person, thereby prejudicing [Duygo]?

2. Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that [Duygo] [`]forcibly compulsed['] [sic] the alleged victim to engage in sexual relations with him?

Appellant's Brief, at 7.

Duygo first asserts that the trial court erred when it denied his motion for a mistrial, which came after his counsel became ill with COVID-19 and therefore could not present Duygo's closing argument in person.

Defendants may move for a mistrial when they suffer from some sort of

prejudicial event. *See* Pa.R.Crim.P. 605(B). However, a mistrial is an "extreme remedy [that] must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." ***Commonwealth v. Bracey***, 831 A.2d 678, 682 (Pa. Super. 2003) (citation omitted). "[T]he decision whether to declare a mistrial is within the sound discretion of the trial judge and will not be reversed absent a flagrant abuse of discretion." ***Commonwealth v. Cottam***, 616 A.2d 988, 997 (Pa. Super. 1992).

Pennsylvania Rule of Criminal Procedure 604 allows "each party[, i.e., the Commonwealth and defendant,] … to present one closing argument to the jury." Pa.R.Crim.P. 604(B). Paralleling his argument before the trial court, Duygo avers that by compelling his counsel to utilize Zoom in order to present a closing argument, the lower court inherently prejudiced him. Specifically, Duygo notes the disparities between virtual technology and in-person communications. *See* Appellant's Brief, at 15 ("[I]t is indeed a major hurdle for counsel to not be present before the jury as counsel in the presence of the jury is able to move about the courtroom and observe the faces and expressions of the jury up close and personally.").

Duygo's counsel had been present in the courtroom for the duration of the trial up until that point, but after receiving a positive test result for COVID-19, counsel was not provided any opportunity to speak, in person, before the jury. Although counsel provided his closing argument via Zoom and, too, ensured that another attorney from the Fayette County Public Defender's

Office, acting as Duygo's co-counsel, was present with Duygo at this juncture, "[t]he damage had been done in that the jury was informed of [counsel's] condition[.]" *Id*. In closing, taken to its furthest point, Duygo posits that a court "may require counsel on any side of any issue to put on his or her entire trial by Zoom." *Id.*

> The lower court found that
>
> under the circumstances, [it] had limited options: postpone closing arguments (and therefore jury deliberation) until an unknown future date; permit Attorney Jaynes to give a closing argument in person and risk the spread of a contagious disease; require the closing argument be given in person by another public defender attorney instead of Attorney Jaynes; or allow Attorney Jaynes to give his closing argument remotely.

Trial Court Opinion, 9/8/22, at 5. As to the particulars of what, in fact, happened on the at-issue day:

> Attorney Jaynes was offered the opportunity to request specific jury instructions, and the closing argument was broadcast via a 65- to 70-inch monitor on which only Attorney Jaynes was displayed, clearly observable by, and audible to, the entire jury, including the alternate jurors. [Duygo] was permitted to have Attorney Jaynes'[s] co-counsel, Attorney Nicholas Clark, in person beside him in the courtroom. In addition, [the lower court] carefully explained to the jury why Attorney Jaynes was presenting his closing argument remotely and that Attorney Clark was seated beside [Duygo].

*Id*., at 5-6 (record citations omitted).

While a "defendant may consent to any proceeding being conducted using two-way simultaneous audio-visual communication," Pa.R.Crim.P. 119(B), counsel's use of a remote video communicative platform, whether compelled or otherwise, does not appear to fit under the auspice of any

existing criminal procedure rule. Absent any kind of rule or procedure in place that would serve as a basis to prevent counsel's remote presentation and with Duygo having provided no analogous authority to militate the opposite conclusion, we see no perceptible basis to find that Duygo was deprived of a fair trial through his counsel's usage of Zoom in delivering a closing argument. In its attempt to make counsel's Zoom experience as similar to an in-person communication as possible, the court directly questioned the jurors as to whether they could hear and see Attorney Jaynes. **See** N.T., 1/4/22, at 17. All jurors indicated that they were able to see him and understand what he was saying. **See id**. Additionally, as Attorney Clark remained with Duygo in the courtroom, Duygo was never without in-person representation. Accordingly, the lower court did not abuse its discretion when it denied Duygo's motion for a mistrial.

In his second claim, Duygo contends that the Commonwealth did not present sufficient evidence of 'forcible compulsion,' which was an element in several of his convicted offenses.[2] Instead, Duygo alternatively suggests that

---

[2] As their names suggest, the offenses of rape by forcible compulsion, aggravated assault by forcible compulsion, and indecent assault by forcible compulsion all required the Commonwealth to demonstrate this complained-of element beyond a reasonable doubt. In a similar naming convention, the two remaining offenses, aggravated indecent assault without the complainant's consent and indecent assault without the complainant's consent, required the Commonwealth to prove beyond a reasonable doubt that the alleged offender acted without the complainant's consent. To a certain extent, in his argument section, Duygo blurs the lines between the element of 'forcible compulsion' and the element of lack of consent.

the victim consented to what had occurred between Duygo and her.

We employ a well-settled set of precepts for sufficiency challenges:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (quoting *Commonwealth v. Estepp*, 17 A.3d 939 (Pa. Super. 2011)). We also emphasize that the fact-finder, in making credibility determinations, is free to believe all, part, or none of the evidence it is presented. *See Commonwealth v. Stevenson*, 894 A.2d 759, 773 (Pa. Super. 2006). Lastly, "it is well-established that the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005) (citations and internal quotation marks omitted).

For the element of 'forcible compulsion,' "the Commonwealth was required to establish beyond a reasonable doubt that [Duygo] used either physical force, a threat of physical force, or psychological coercion[.]"

***Commonwealth v. Brown***, 727 A.2d 541, 544 (Pa. 1999). Duygo highlights that the victim's testimony evidences that no weapon was used on her and that she never verbalized any specific command for Duygo to stop what he was doing. Duygo also presents his own testimony wherein he stated that the victim agreed to have sex with him. ***See*** N.T., 1/3/22, at 84. In summary, the victim "chose to follow [Duygo] between two buildings, where the two engaged in consensual sexual relations." Appellant's Brief, at 18. Furthermore, derived from one of the responding police officer's testimony, the victim "had no bruises to indicate a struggle." ***Id.***, at 19 (record citation omitted).

Conversely, the victim indicated that Duygo "had [her] pinned up against the wall with his own body force and with his arms, against [her] back pushing [her] into the building." N.T., 1/3/22, at 49. The victim explained that, in her attempt to find her way back to her father's house, she "was following [Duygo] and he led [her] back behind some buildings." ***Id.***, at 39. When Duygo tried to kiss the victim, she pulled away "and then he turned [her] around so that [she] was facing [one of the] building[s]." ***Id***. During this time, which involved Duygo taking off the victim's clothing and proceeding to place his penis inside of her vagina, the victim "was trying to get away[.]" ***Id.***, at 40. Specifically, she "kept trying to push away from the building [she was being pinned against]." ***Id***. After struggling for some time, she eventually was successful in breaking free from Duygo. ***See id***.

In viewing the evidence admitted at trial in light most favorable to the

Commonwealth, there was sufficient evidence to demonstrate that Duygo used physical force on the victim, notwithstanding his own testimony to the contrary. The victim's testimony unequivocally established that she was pinned against a building by Duygo in a nonconsensual manner, which thereafter resulted in Duygo removing her clothing and sexually assaulting her. In synthesizing both Dugyo's and the victim's testimony, it was up to the jury, as fact-finder, to make credibility determinations, and it ultimately found that Duygo's actions constituted 'forcible compulsion.'

As neither of Duygo's issues merit any relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/2023