J-A02033-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC JOHN COLLINS | : | |
| | : | |
| Appellant | : | No. 227 WDA 2025 |

Appeal from the Judgment of Sentence Entered December 11, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000659-2024

BEFORE: STABILE, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED: May 7th, 2026**

Eric John Collins ("Collins") appeals the judgment of sentence entered by the Allegheny County Court of Common Pleas ("trial court") following his convictions of one count each of incest of a minor—complainant under thirteen years of age; involuntary deviate sexual intercourse with a child; indecent assault of a person—complainant less than thirteen years of age; unlawful contact with a minor—sexual offenses; endangering the welfare of children; and corruption of minors.[1] On appeal, Collins challenges the trial court's denial of his request for a jury instruction that would have limited the jury's

---

[1] 18 Pa.C.S. §§ 4302(b)(1), 3123(b), 3126(a)(7), 6318(a)(1), 4304(a)(1), 6301(a)(1)(ii). Section 6318(a)(1) of the Crimes Code was in effect when the Commonwealth charged Collins but it was deleted by Act of June 27, 2025, P.L. 6, No. 5, § 2, and is now codified at 18 Pa.C.S. § 6318(a)(1.2).

consideration of facts that served as the basis for the expert's opinion but were not admitted into evidence. Upon review, we affirm.

The record reflects that in 2016, Collins put his mouth on the penis of his biological son, E.C., on two occasions when E.C. was six years old. N.T., 9/16-18/2024, at 56, 59-62. At trial, E.C., then age fourteen, testified that both incidents occurred during an overnight visitation at Collins' apartment. *Id.* at 53, 55-56, 59-62. The first incident happened when Collins told E.C. it was time to shower. *Id.* at 60. After E.C. was inside the bathroom, Collins entered just as E.C. was done using the toilet and still had his pants down. *Id.* at 60-61. Collins told him just before the incident, "This is what doctors do to make sure you're healthy." *Id.* at 61. Before the second incident, which occurred later the same day under similar circumstances, Collins told him, "I have to test you again." *Id.* at 62, 75. E.C. testified that the second incident was interrupted when Collins' then-girlfriend walked into the bathroom and she called Collins "a sick piece of shit." *Id.* at 72-74. Around the same time as these incidents, E.C. was diagnosed with multiple mental health diagnoses and began having behavioral issues, including urinating in inappropriate places and refusing to shower or brush his teeth. *Id.* at 100-02, 106, 108, 112, 153.

In late 2023, E.C.'s maternal grandfather and guardian, David Krepp,[2] contacted a local child and adolescent crisis team intervention services ("CACTIS") because of E.C.'s ongoing difficulty with his hygiene. *Id.* at 57, 69-70, 97, 101-02, 105, 108, 151, 153. When a CACTIS counselor arrived, E.C. disclosed the two incidents to the counselor. *Id.* at 57, 59, 70, 103, 105. E.C. did not tell anyone about or remember these incidents until the night he disclosed them to the CACTIS counselor. *Id.* at 70-71, 103, 154.

Detective Daniel Kihn of the Allegheny County Police Department, and Angela Johnson, a caseworker at the Allegheny County Office of Children, Youth and Families, separately investigated E.C.'s allegations against Collins. *Id.* at 81-82, 147-48. They attended and observed E.C.'s forensic interview from behind a one-way mirror. *Id.* at 83, 152. They also interviewed several individuals as part of their investigations, including Collins' then-girlfriend, who denied E.C.'s account of what occurred. *Id.* at 91, 94-95, 148-52, 155. Collins denied all allegations. *Id.* at 162, 165.

Based on the foregoing, the Commonwealth charged Collins as described above.[3] During the September 2024 jury trial, and of relevance here, the trial court qualified Jamie Mesar, a clinical instructor at West Virginia

---

[2] E.C. has lived with his grandfather since he was two years old and refers to him as "Dad." N.T., 9/16-18/2024, at 53, 67, 75, 98. E.C. has not had any contact with Collins since approximately 2016. *Id.* at 63, 89, 161.

[3] The Commonwealth withdrew a charge of sexual assault, 18 Pa.C.S. § 3124.1. N.T., 9/16-18/2024, at 16.

- 3 -

University School of Social Work, as an expert witness for the Commonwealth in the fields of victimization, victim behavior, and forensic interviewing, over Collins' objection.[4] *Id.* at 117, 122.

Ms. Mesar first confirmed that she was wholly unfamiliar with the facts of what was alleged to have occurred—she had not interviewed E.C. or reviewed the case in preparation for her testimony. *Id.* at 124. On direct examination, she provided several research-based explanations of why victims may delay disclosing childhood sexual abuse, including fear of being punished or not believed, or fear that the abuse will continue after disclosure. *Id.* at 125. She further opined that victims do not respond in any one way to childhood sexual abuse and listed several possible behavioral responses, including a regression of hygiene. *Id.* at 128-29.

On cross-examination, and of relevance here, the following exchange occurred between Collins' counsel and Ms. Mesar regarding research on false disclosures of abuse by children:

Q.   And you would agree with me that children do lie sometimes, correct?

A.   Even adults lie at times. So yes, children do lie at times.

Q.   Humans lie?

A.   That's right.

---

[4] Ms. Mesar testified as an expert pursuant to section 5920 of the Pennsylvania Judicial Code. *See* 42 Pa.C.S. § 5920 (permitting expert testimony relating to victim responses to sexual violence); *see also* N.T., 9/16-18/2024, at 171; Collins' Brief at 33; Commonwealth's Brief at 14.

Q. So there are times when children do make up allegations of abuse, correct?

A. There are. Looking at that through research, we know that often the percentage of what is called a false disclosure or a falsification of a report of child abuse falls anywhere between 2 to 7 percent of all reported cases that are seen in research.

That number climbs when the first person to actually make the disclosure is not the child. So that might be a biological parent that first made the disclosure or it could be a sibling that said that this happened but not actually the words of a child. So when the child themself discloses it, it is actually a very low rate that we see as far as falsifications.

*Id.* at 133-34. Collins did not move to strike this testimony or request a cautionary instruction at that time. Instead, in his proposed jury instructions, Collins sought for the trial court to charge the jury with Pennsylvania suggested standard criminal jury instruction 4.11: "Limiting Jury's Consideration of Facts Not Admitted Into Evidence Except As Basis for Expert's Opinion" ("Instruction 4.11"). Instruction 4.11 states the following:

In giving you [his] [her] opinion, *[name of expert]* referred to certain facts *[[[[[[specific examples]* that have not been presented from the witness stand except as *[name of expert]* described them as part of the basis for [his] [her] opinion. Because these facts have not been presented in evidence except through *[name of expert]*'s testimony, you should consider them only for the limited purpose of deciding whether or not to accept *[name of expert]*'s opinion; you should not consider those facts in any other way in your deliberations in this case because they have no bearing on the question of whether the defendant is guilty or not guilty except for the purpose I have just described to you.

Pa. SSJI (Crim), § 4.11 (2024) (brackets and emphasis in original).

After the close of evidence, and outside the presence of the jury, the trial court reviewed proposed jury instructions with the prosecutor and defense counsel. *Id.* at 166-75. The trial court denied Collins' request to include Instruction 4.11. *Id.* at 169-72. Collins later lodged his objection to the trial court's refusal to give the instruction immediately after the jury exited the courtroom to deliberate. N.T., 9/16-18/2024, at 246.

The jury convicted Collins of all charges. The trial court ordered a presentence investigation report and the parties appeared for a sentencing hearing on December 11, 2024. The trial court sentenced Collins to an aggregate term of eleven-and-one-half to twenty-three years of incarceration followed by three years of probation.[5] On January 28, 2025, the trial court denied Collins' timely post-sentence motion. This timely appeal followed.

Collins presents one issue for our review:

Did the trial court abuse its discretion in denying the defense request for jury instruction 4.11, "Limiting Jury's Consideration of Facts Not Admitted Into Evidence Except As Basis for Expert's Opinion," when a Commonwealth expert testified that research shows that false reports occur in just "2 to 7 percent" of child sex abuse cases?

Collins' Brief at 7 (unnecessary capitalization omitted).[6]

_____

[5] Collins is further subject to lifetime registration as a sex offender.

[6] The Commonwealth argues that under a strict construct of waiver, Collins' issue could be deemed waived because he did not indicate any additions or corrections to the jury's charge when asked by the trial court and did not object until after the jury retired to deliberate. *See* Commonwealth's Brief at 7-8, 10-11. Under the circumstances of the case, however, the
*(Footnote Continued Next Page)*

"[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Sow*, 333 A.3d 698, 702 (Pa. Super. 2025) (quotation marks and citation omitted). "[T]the trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the [a]ppellant was prejudiced by that refusal." *Id.* (quotation marks and citations omitted). Further, "the suggested standard jury instructions are not binding and do not alter the discretion afforded trial courts in crafting jury instructions; rather, as their title suggests, the instructions are guides only." *Commonwealth v. Pownall*, 278 A.3d 885, 896 n.11 (Pa. 2022) (quotation marks and citation omitted). The only exception is if a precedential judicial decision makes the language of a suggested standard jury instruction mandatory; in such circumstances, courts are bound by that language. *Commonwealth v. H.D.*, 247 A.3d 1062, 1064 n.1 (Pa. 2021). No court, however, has interpreted Instruction 4.11.

Collins argues that the trial court abused its discretion in denying his request to give Instruction 4.11. Collins' Brief at 21. He contends that this

---

Commonwealth concedes Collins preserved the issue because he "clearly signaled his intent to object before the jury charge began, and then formally lodged his objection very shortly after the jury left the courtroom to begin its deliberations" and "before the jurors received the trial exhibits." *Id.* at 8, 11. We agree Collins sufficiently preserved this issue and decline to find waiver. *See* N.T., 9/16-18/2024, at 172, 246.

case rested solely on credibility and Ms. Mesar improperly vouched for E.C.'s credibility when she testified that research shows only two to seven percent of child sex abuse reports are fabricated. *Id.* at 21. Collins maintains that Ms. Mesar's testimony "suggest[ed] that it would be a significant statistical anomaly for [E.C.] to be lying," and argues the trial court should have instructed the jury not to consider that data as substantive evidence but rather, only to explain the basis for Ms. Mesar's opinion. *Id.* at 21-41.

At the time of Collins' request for Instruction 4.11, the trial court explained that the instruction was not relevant because it applies in cases where the expert testifies to the specific facts of the case, as opposed to the general testimony given by Ms. Mesar in this case:

> [TRIAL COURT:] Then there's a third instruction on the expert, limiting [the] jury's consideration of facts not admitted. I'm not sure that that's particularly relevant either.
>
> [PROSECUTOR]: Your Honor, I would agree. I think that's more typically where an expert is testifying as to their opinion on the specific facts of the case. Again, that's not –
>
> THE COURT: This isn't a case where she's testifying based on any facts relative to this case. She's testifying specifically with no information about this case.
>
> [PROSECUTOR]: Yes, Your Honor.
>
> [DEFENSE COUNSEL]: Your Honor, how I read that or interpret that is that Ms. Mesar did make a number of statements on the stand about studies she's read and stated things as facts such as only I think she said 5 [sic] to 7 percent of child allegations are false and that number increases if someone else besides the child makes the report.

- 8 -

Your Honor, I think that this instruction informs the jury that those are the types of facts that are not to be considered as facts in this case. It just forms the basis of her opinion which was stated, so that's why I asked for this instruction.

THE COURT: So I think as an expert what she testifies based on is the knowledge, intelligence, education that she receives that makes her an expert, and part of that is continuing education in the same way that you have to have it and I have to have it. So she bases all of her opinions on that data, the peer-reviewed journals and so on. That's different than what I think this instruction is talking about. This instruction is talking about facts not in evidence in the sense of, you know, if an expert relies on -- I'm trying to think of a good example because I've never been asked to use this in any case.

* * *

If the expert was testifying let's say in a homicide case where the defense was that it was an accidental shooting and the expert opined that it wouldn't be possible for this particular gun to fire because it has this type of safety feature and that was a fact not in evidence, then this instruction I think would apply. But I don't recall there being any objection to a fact not in evidence.

I just don't think it applies in this case. This is the type of testimony that we admit all the time under section 5920 based on her training and experience, her knowledge and understanding of the behavior of children. Part of her training is, in fact, based on all of the continuing education she does which includes relevant studies and so on. So I'm going to deny that request.

[DEFENSE COUNSEL]: Thank you, Your Honor. After the instructions, if I may just put my objection to you not reading the instruction on the record again.

THE COURT: Yes. Absolutely. That's fine.

N.T., 9/16-18/2024, at 169-72. When Collins later objected to the trial court's refusal to give Instruction 4.11, the trial court further explained its ruling:

THE COURT: Yes. I did rule on that, and I also pulled the subcommittee notes for it and took a look at all of the notes. It

- 9 -

does appear to me that the current state of the law is this limiting instruction would not apply to the witness citation of some type of professional document, peer-reviewed article or so on.

Based upon what I'm seeing in the notes, there have been a couple of cases … that talk about statements by testimony of psychiatrists who give opinions and so on.

So it's my view at this point that when they talk about facts, they're talking about facts not in evidence. They're talking about things that the Commonwealth witnesses testified to, and that's something that's also noted in the subcommittee notes.

*Id.* at 246-47.

Finally, the trial court reiterated the following in its opinion:

[Collins] misunderstands the purpose of [] Instruction 4.11. [Ms.] Mesar testified that her opinions were based in part on studies that she has read, but largely based on her education, training, and experience that makes her an expert witness. Part of her training would necessarily include maintaining an awareness of relevant studies and articles. She did not testify to facts not in evidence that the Commonwealth would have to establish in order to convict [Collins].

Trial Court Opinion, 4/15/2025, at 9.

We discern no abuse of discretion or error in the trial court's determination that Ms. Mesar's testimony is not the kind contemplated by Instruction 4.11. The subcommittee note to Instruction 4.11, referenced and relied upon, in part, by the trial court, explains that "[i]t is proper for an expert witness to base his or her opinions on facts not admitted into evidence in certain situations," and describes such situations as follows:

This typically occurs in connection with the testimony of a psychiatrist who gives an opinion based on his or her consultation with the defendant and others--i.e., on the basis of statements made by the defendant out of the hearing of the jury or on the

basis of other information not admitted into evidence, such as incidents from the defendant's childhood, etc.

Pa. SSJI (Crim), § 4.11, Subcommittee Note.[7] Consistent with the foregoing, the cases cited in the subcommittee note involve testimony by experts regarding their personal examinations of the defendant or investigation of the facts of the specific case, who provided opinions as to the defendant's culpability based on the facts uncovered through their examinations or investigations. *See id.* (citing *Commonwealth v. Paskings*, 290 A.2d 82 (Pa. 1972); *Commonwealth v. Thomas*, 282 A.2d 693 (Pa. 1971); *Commonwealth v. Ahearn*, 218 A.2d 561, 567-68 (Pa. 1966);

_____

[7] The Criminal Instructions Subcommittee of the Pennsylvania Supreme Court Committee for Proposed Jury Instructions prepares suggested standard jury instructions for criminal trials. *Commonwealth v. Bracey*, 831 A.2d 678, 684 n.5 (Pa. Super. 2003). The suggested instructions are published by the Pennsylvania Bar Institute, which is the continuing legal education arm of the Pennsylvania Bar Association. *Id.* at 684 n.5.

Our Supreme Court has considered the subcommittee's notes when reviewing jury instruction challenges, expressly noting that the subcommittee members have "undoubtedly spent countless hours discussing, drafting, debating, and redrafting the model instructions[.]" *Commonwealth v. Drummond*, 285 A.3d 625, 639, 642 (Pa. 2022) (considering the subcommittee note to a suggested standard criminal jury instruction in determining the propriety of a "proof beyond a reasonable doubt" instruction given by the trial court); *see also Pownall*, 278 A.3d at 896 n.11 (stating the subcommittee note supported the trial court's reasoning to hold under advisement a motion in limine seeking to preclude use of a suggested standard criminal jury instruction); *H.D.*, 247 A.3d at 1064, 1066-67 (considering the subcommittee note to a suggested standard criminal jury instruction in determining the propriety of an "interference with custody of children" instruction given by the trial court).

*Commonwealth v. Jordan*, 181 A.2d 310 (Pa. 1962); *Commonwealth v. Heller*, 87 A.2d 287, 288 n.1 (Pa. 1952)).

As stated in both the text and the title of Instruction 4.11, the charge is applicable where the expert gave an opinion based upon facts that were not admitted into evidence. That simply was not what occurred here, as Ms. Mesar did not provide an opinion at all in response to defense counsel's questions. An opinion in this context is defined as "[a] person's thought, belief, or inference, esp. a witness'[] view about facts in dispute, as opposed to personal knowledge of the facts themselves." Black's Law Dictionary (OPINION) (12th ed. 2024).

Ms. Mesar did not give her own thoughts or views about facts in dispute. She did not say, for example, that E.C. was telling the truth when he made his disclosure or state, to a reasonable degree of professional certainty, that children almost never lie when making disclosures of abuse. Instead, in response to a broad, general question posed to her by defense counsel on cross-examination—whether children ever lie when making allegations of sexual abuse—she explained that they do, according to research, in approximately two to seven percent of cases in certain circumstances, and in greater numbers in other circumstances. N.T., 9/16-18/2024, at 133-34. She expressed no opinion; her testimony was pure fact.

Relying on Pennsylvania Rules of Evidence Rule 703 (Bases of an Expert's Opinion Testimony) and Rule 705 (Disclosing the Facts or Data

Underlying an Expert's Opinion), along with their comments, Collins argues that the trial court was required to give Instruction 4.11 because (1) Ms. Mesar testified about underlying facts and data to support her opinion that children rarely fabricate allegations of sexual abuse and (2) her testimony was inadmissible because it improperly bolstered E.C.'s credibility. Collins' Brief at 21-41.

> Rule 703 provides the following:
>
> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703. Rule 705 provides that "[i]f an expert states an opinion the expert must state the facts or data on which the opinion is based." Pa.R.E. 705. The comments to both rules contain the following identical language:

> When an expert testifies about the underlying facts and data that support the expert's opinion and the evidence would be otherwise inadmissible, the trial judge upon request must, or on the judge's own initiative may, instruct the jury to consider the facts and data only to explain the basis for the expert's opinion, and not as substantive evidence.

Pa.R.E. 703, cmt.; Pa.R.E. 705, cmt.

Collins' argument here misses the critical point, discussed above, that the complained-of testimony was not an opinion given by Ms. Mesar. Contrary to his claim, she did not state her view that children rarely lie. Instead, when asked by defense counsel whether children ever lie when disclosing sexual abuse, she stated the fact, according to research, that children lie at low rates

- 13 -

when they are the first to disclose abuse, and higher rates when someone else makes the first disclosure.

Moreover, she did not interview anyone in connection with this case, including Collins or E.C., or otherwise conduct any investigation. N.T., 9/16-18/2024, at 124. She testified that she knew nothing about the case other than the defendant's name, which she learned from her subpoena to appear in court. *Id.* She therefore certainly could not render any opinion based on "facts or data in the case that [she] has been made aware of or personally observed." *See* Pa.R.E. 703. Indeed, she gave no opinion at all in response to defense counsel's questioning. As such, for this testimony, Rules 703 and 705 are inapplicable.

Accordingly, the trial court did not err or abuse its discretion when it determined that Collins was not entitled to Instruction 4.11. *See Sow*, 333 A.3d at 702. We therefore affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 05/07/2026

- 14 -